NEW-YORK,
Nov. 1809.

BROOKER
v.
COFFIN.

To say of a person, " she is a common prostitute, and I will prove it ;" or that " she was hired to swear a child on me : she had a child before this,when she went to Canada ; she would come damn'd nigh going to the state prison," is not actionable, without alleging special damages.
The rule seems to be, that where the charge, if true, will subject the party charged to an indictment for a crime, involving moral turpitude, or subject him to an infamous punishment, then the words are, in themselves, actionable.

### BROOKER *against* COFFIN.

THIS was an action for *slander.* The declaration contained two counts. The first charged, that on the 1st of *January,* 1808, at *Schagticoke,* in the county of *Rensselaer,* &c. for that whereas the plaintiff being a person of good name, &c. the defendant falsely and maliciously did speak and utter of and concerning the plaintiff, the following false, scandalous and defamatory words : " *She* (meaning the plaintiff) *is a common prostitute, and I can prove it.*" The second count charged, that the defendant afterwards, to wit, on the day and year aforesaid, at the place aforesaid, in a certain other discourse, &c. did falsely and maliciously speak and utter the following false, scandalous and defamatory words, to wit : " *She* (meaning the plaintiff) *was hired to swear the child on me ;*" (meaning that the plaintiff was hired falsely and maliciously to swear a certain child on the defendant.) " *She* (meaning the plaintiff) *has had a child before this,*" (meaning before this child or the child which the said defendant had before said the said *Nancy* had been hired to swear on him) " *when she went to Canada ;*" (meaning a certain time when the plaintiff had been at *Canada.*) " *She* (meaning the plaintiff) *would come damn'd nigh going to the state prison,*" (meaning that the said plaintiff was guilty of such enormous and wicked crimes, as would, if punished according to the laws and statutes, in such cases made and provided, condemn her to infamous punishment in the state prison.) Whereas, in truth, &c.

There was a general demurrer to the first count, and a special demurrer to the second count, and joinder.

*Wendell,* in support of the demurrer. In *England,* there are various statutes for the punishment of disorder-

ly persons.* But the decisions in support of the action have been where the party shows a special damage, as for calling a woman a whore, whereby she lost her marriage.† Notwithstanding the statutes against disorderly persons, it has never been held that those words were actionable, without alleging a special damage. It is true, that by the act for apprehending and punishing disorderly persons,‡ a common prostitute is declared to be a disorderly person, and therefore liable to punishment: but, by the same act, vagrants, beggars, jugglers, pretenders to physiognomy, palmistry, or such crafty sciences, fortune tellers, discoverers of lost goods, persons running away from their wives and children, vagabonds and wanderers, and all idle persons not having visible means of livelihood, are also declared to be disorderly persons, and are equally liable to be apprehended and punished under the act. If, then, to call a woman a common prostitute is actionable, without alleging special damage, on the ground of a liability to punishment under this act, then to call a person a juggler, fortune teller, or physiognomist, would also be actionable, which will hardly be pretended.

The words " that the plaintiff was *hired to swear a child,*" are not actionable ;§ and they are not helped out by the *innuendo.* The words are ambiguous, and it is not said whose child was referred to, so that the defendant could not come prepared to prove the truth of the words. The words that " she would come damn'd nigh going to the state prison," are too vague and general to be the ground of an action.¶

Again, in the second count, the plaintiff does not aver that she was of good fame, &c. and free from the crime charged against her.**

*Sedgwick,* contra. 1. The numerous cases to be found in the books relative to the action of slander, and

NEW-YORK,
Nov. 190.

BROOKER
*v.*
COFFIN.

* 4 Com. Just. B. 76. 83.
† 1 Com. Dig. 262. Action for Defamation, (D. 30.)
‡ 11 sess. e. 31.

§ 1 Com. 270. (F. 12.) (D. 6.)

¶ 2 Johns. Rep. 12.

** 1 Com. Dig. 276. (G.1.)

NEW-YORK,
Nov. 1809.

BROOKER
v.
COFFIN.

*1 *Com. Dig.*
*Action on the*
*case for Defa-*
*mation,* (D. 3.)
(D. 9.) (F. 20.)
3 *Black. Com.*
124. 4 *Bac. Abr.*
487.

† 11 sess. c.
31. s. 1, 2, 3.

‡ 5 *East,* 463.
*Cowp.* 275. 278.
2 Ld. *Raym.*
959. 1 *Vent.*
117.

as to what words are actionable, and what are not, are so contradictory and absurd, as to afford no satisfactory rule on the subject.* Resort must, therefore, be had to the principle on which the action of slander is founded. Where the words spoken impute to a person an act of moral turpitude or crime which may subject him to punishment, they are actionable. Here the words, besides imputing great moral turpitude, and tending to render the person odious in the opinion of mankind, may, if true, also subject the party to an infamous and disgraceful punishment. *Common* prostitutes, by the act which has been cited, are declared disorderly persons, and may be sent to bridewell or house of correction, and be kept to hard labour for 60 days, or even for six months ; and, moreover, may be whipped, at the discretion of the general sessions of the peace.† The first set of words charged in the declaration are, according to the general principle I have stated on this subject, actionable.

2. As to the second set of words, I admit, that the sense of them cannot be enlarged by the *innuendo.* The true rule is, that the words are to be taken in the sense in which they are understood by the generality of mankind. This rule is well laid down and illustrated by Lord *Ellenborough,* in the case of *Woolnoth* v. *Meadows.*‡ If the words then fairly import the charge of a crime, and would be so understood by mankind, the injury is inflicted on the character of the plaintiff, as completely and deeply, as if the crime had been imputed in the most direct and positive terms ; and the plaintiff is entitled to a remedy. Can there be any doubt, in the mind of any man, that the defendant meant to say that the plaintiff had been guilty of perjury ?

*Wendell,* in reply, observed, that if to say of a person what, if true, might subject him to an indictment,

would render the words actionable, without alleging spe-
cial damage, then to say .of a person that he had com-
mitted an *assault* and *battery* on another, would be ac-
tionable.

SPENCER, J. delivered the opinion of the court. The
first count is for these words, " she is a common pros-
titute, and I can prove it;" and the question arises,
whether speaking these words gives an action, without
alleging special damages. By the statute (1 *R. L.* 124.)
common prostitutes are adjudged disorderly persons,
and are liable to commitment, by any justice of the peace,
upon conviction, to the bridewell or house of correc-
tion, to be kept at hard labour for a period not exceed-
ing 60 days, or until the next general sessions of the
peace. It has been supposed that, therefore, to charge
a woman with being a common prostitute, was charging
her with such an offence as would give an action for the
slander. The same statute which authorises the inflic-
tion of imprisonment on common prostitutes, as disor-
derly persons, inflicts the same punishment for a great
variety of acts, the commission of which renders per-
sons liable to be considered disorderly; and to sustain
this action would be going the whole length of saying,
that every one charged with any of the acts prohibited by
that statute, would be entitled to maintain an action for
defamation. Among others, to charge a person with
pretending to have skill in physiognomy, palmistry, or
pretending to tell fortunes, would, if this action is sus-
tained, be actionable. Upon the fullest consideration,
we are inclined to adopt this as the safest rule, and one
which, as we think, is warranted by the cases : In case
the charge, if true, will subject the party charged to an
indictment for a crime involving moral turpitude, or sub-
ject him to an infamous punishment, then the words will
be in themselves actionable ; and Baron *Comyns* consi-

ders the test to be, whether the crime is indictable or not. (1 *Com.* tit. *Action on the case for Defamation*, F. 20.) There is not, perhaps, so much uncertainty in the law upon any subject, as when words shall be in themselves actionable. From the contradiction of cases, and the uncertainty prevailing on this head, the court think they may, without overleaping the bounds of their duty, lay down a rule which will conduce to certainty, and they therefore adopt the rule I have mentioned as the criterion. In our opinion, therefore, the first count in the declaration is defective.

The second count is for saying of the plaintiff, " she was hired to swear the child on me, she has had a child before this when she went to *Canada ;* she would come d—d near going to the state prison." These words are laid as spoken at one time ; if, then, any of them are actionable, it is sufficient. The *innuendoes* enlarge their meaning, and are not justified. One of them avers, that the defendant meant that the plaintiff was hired, falsely and maliciously to swear the child on the defendant; and another *innuendo*, in explaining the words, " she would come damn'd near going to state prison," alleges, that the defendant meant that the plaintiff was guilty of such enormous crimes as would, if punished according to the laws, &c. condemn her to infamous punishment in the state prison. Now I do not perceive, that the charge at all warrants the inference that the plaintiff had been guilty of perjury ; and the cases of *Hopkins* v. *Beadle*, (1 *Caines*, 347.) *Stafford* v. *Green*, (1 *Johns. Rep.* 505.) and *Ward* v. *Clark*, (2 *Johns. Rep.* 11.) are authorities against sustaining this count.

The defendant must, therefore, have judgment.