Bowen, J.
Three questions are presented in the record for decision, which, for convenience, may be stated as follows :
1. Does the second count of the declaration contain actionable words ?
- 2. Does the special plea of the defendant contain matter sufficient to bar a recovery by the plaintiff?
3. "Was it competent for the court of common pleas, at its November term, 1851, to enter a judgment nunc pro tune upon a verdict found in the same court at its November term, 1848?
To determine the question whether the words are actionable in themselves, when not spoken of the plaintiff in his office, profession, or calling, we must ascertain whether the charge, if true, will subject the party charged to an indictment for crime, involving moral turpitude, or subject him to an infamous punishment, or will tend to render him loathsome to society in which he moves. If any such result would be likely to attach to the plaintiff, by means of the speaking of such defamatory words, then they will be, in themselves, actionable. Brooks v. Coffin, 5 Johns. 188; Martin v. Stillwell, 13 Ib. 275. By this rule the infamy of the offense or of the punishment constitutes the test whether the words are actionable, when an indictable *offense is charged upon the plaintiff. [242 And so it must be understood when he has imputed to him acts not subject to indictment, but which, nevertheless, involve great moral turpitude, and, if believed, would exclude him from the favor and countenance of all moral persons; as, for example, the crime of sodomy, or a charge that the plaintiff was laboring under some loathsome disease. The nature and turpitude of the act charged are the criterions by which to decide whether the injury is such as to be the foundation of an action. A charge of assault and battery — of fighting at fisticuffs — of refusing aid to an officer to arrest criminals — resisting an officer in the execution of process — keeping a ferry or tavern without license, and others of the like class, ' *243 •though subject to indictment and punishment, and of themselves reprehensible as violations of positive law, do not imply that degree of moral depravity which will sustain an action of slander for words spoken imputing such offense.
Section 101 of the act punishing such offenses (Statutes, 286), enacts: “That if any person shall knowingly, willfully, and maliciously cut, fell, deface, alter, or remove anydandmark, corner, or bearing-tree, properly established, the person so offending shall, on conviction thereof, be fined in any sum not exceeding five hundred dollars, or imprisoned in the cell or dungeon of the jail of the county, and be fed on bread and water only, not exceeding thirty days, or both, at the discretion of the court.”
In a conviction under this act, not only would the plaintiff be subject to pecuniary loss, but to loss of character, because the removal of boundaries has always been held in execration. The curse of God was denounced against it by the Mosaic law. Deut. ix: 14. Dr. Scott says that the removal of landmarks was a crime among the Israelites similar to forging, altering, destroying, or canceling 243] *the title deeds of an estate at this day. The Romans considered it an infamous offense, and all civilized nations have been of the same opinion. Todd v. Rough, 10 Serg. & Rawle, 22; Young v. Miller, 3 Hill, 21.
We are satisfied that both counts of the declaration contain allegations sufficient to maintain the action, and that the motion in arrest was properly overruled.
2. The special plea to the first count of the declaration attempts to repel any malicious and. slanderous intentions in making the publication. Both parties were members of a religious church, whose discipline authorizes and makes it the duty of those who fall out or differ in their secular affairs to come before the body of which they constitute a part, and have an investigation into and settlement of disputes between them. For this purpose either may prefer his petition to the church, specifying the cause of complaint he has against his brother member. By this means the subject is brought officially to the notice of those charged with its adjudication. Having this clearly authorized right thus to appear in the character of a petitioner, and to ask for a hearing and decision according to the rules which all of the members undertake to observe, he may pursue it, whenever necessary, against another member, subject to this restriction: he must not institute the proceeding *244, 245 maliciously. He can not shield himself, under the cover of church privilege, from an intentional and willful attack upon another’s-character, under pretense of'inviting a religious inquiry into the-charges he makes. The declaration avers that the defendant charged 'the plaintiff with “ knowingly and maliciously removing the cornerstone.” This the defendant, in his plea, says he did without malice,, for the purpose of bringing the plaintiff to trial on the charge before-■a committee of the church. The plaintiff replies, that the defendant willfully and maliciously ^exhibited the charge to the church, [244 for the purpose of harassing, injuring, and defaming him. It thus-becomes a question of fact for the jury to decide, whether the defendant, in preferring the charge, was governed by a sense of Christian duty and his obligations to the rules of the church, or whether those pure and commendable principles were disregarded by him, and an evil and malignant desire to degrade and injure his neighbor-permitted to control his action. This issue the parties themselves-made, and when settled by verdict must be conclusive, unless the court should set the finding aside. The jury found that the charge-was maliciously made; that the defendant exceeded the privilege of a church member, and should be held for the injury committed-while thus acting contrary to the object and spirit of the discipline. It was not erroneous to allow the jury to pass upon the question thus made up by the parties.
It is said,.however, that the replication does not deny probable-cause on the part of the defendant to make the charge. This was not necessary. The replication was good without it.. If there was-any necessity to aver or to negative the existence of probable cause, on the part of the defendant, that necessity rested with the defendant. It was incumbent on him to place a full and perfect defense upon the record. "Whatever defect, therefore, attaches to the pleadings by the omission of those words, is chargeable to the plea; for-if the principle before alluded to be correct, that such publication as that made by the defendant is only privileged when made in strict compliance with the rules of the church, and iñ good faith,, without malice, it follows that the plaintiff was only bound to answer a general denial of malice, by a roaffirmance of it. Hence,, if the demurrer to the replication had been sustained, as it is claimed ought to have been done, the judgment of the *court would [245 have reached the plea, and set it aside for insufficiency. Wo think that the demurrer was correctly overruled..
*246 3. It is urged with much ability by the counsel for plaintiff in •error, that the action of the court below, at the November term, 1851, in giving a judgment nunc pro-tunc upon the verdict of November, 1848, is not warranted by the laws of this state. Dial was in life when the verdict was returned and the judgment entered upon it: and by filing motions for a new trial and in arrest, within the rules of the court, he superseded the judgment, though not the verdict, until the court should make a disposition of them. No decision, however, of the motions was had at that term, and the general ■order of continuance carried the verdict, the judgment, and the motion to the next term for further action thereon. Before the November term of the court had expired, but after the motions were ■filed, the defendant died. This occurrence divested the court of .any further power over the case, except to hear and determine the motions, and, if overruled, to enter judgment upon the verdict. But if a new trial had been allowed, or the judgment arrested, the •cause could not have proceeded any further, as the death of the party abated it. Neither of the orders of reversal of the Supreme Court reached or attempted to go behind the verdict, but both allowed that to remain undisturbed. Later irregularities only, were .affected by the reversals. And this brings us to the inquiry whether the court, after overruling the motions for a new trial and in arrest, which left the verdict unimpaired, could predicate a judgment upon it as of the term in which it was found; and thereby save the cause from abating, and the plainttiff from losing his recov■ery of-damages.
The power of the courts to enter nunc pro tunc orders *and judgments is discretionary. It may be exercised, in a proper case, •to prevent injustice. Whenever there is a foundation presented by the facts of the case, for the exercise of such power, there should be no hesitation in making the entry. It has been frequently done in this state, and is a practice well known and often followed in the -common-law courts of England and of this country.
Personal actions, by the common law, as well as by our statute, abate by the death of the party. If, before verdict,'such an event happens to one of the suitors, the cause is brought to an end. But if after verdict, and before judgment, he dies, the rule is different. The right to recover being established, and the amount of damages ■determined by the verdict, it shall continue in force, and a judgment may be given upon it as of the term when it was rendered.
*247 In Collins v. Prentice, 15 Conn. 423, it was beld, where a defendant in an action of trespass died after a trial in the superior court, and a verdict for the plaintiff, and during the pendency of a motion for a new trial by the defendant, that after the rule for such motion was discharged, a judgment might be entered for the plaintiff as of the term in which the verdict was had.
In Ryghtmyre v. Durham et al., 12 Wend. 245, the same order was made. And so in Mackay v. Rhinelander, 1 Johns. Cases, 408.
These and other cases to the same point, proceed upon the supposition that judgment might and undoubtedly would have been entered for the plaintiff in time, had it not been for the delay occasioned by the defendant in filing his motion for a new trial, and that when the motion does not prevail, it ought not to work any prejudice to the rights of the plaintiff.
The court of common pleas being satisfied that the *mo- [247' tions of the defendant should be overruled, and having before it the record showing that the motions had operated to delay the verdict of the jury, as well as the judgment of the court entered on its journal during the lifetime of the defendant, conceived it to be justly due to the plaintiff to give him the same benefit from the' verdict as if the motions of defendant had not been interposed. In this we think there was no error; and do, therefore, affirm the judgment of the district court.
, Bartley, C. J., and Swan, Brinkerhoef, and Scott, JJ., concurred.