CELINE VILLEMIN, Respondent, v. MARGARET BROWN, Appellant.

First Department, November 12, 1920.

Slander — charge that person is a " crook " — words not slanderous per se — failure to allege special damages or that word was used in respect to plaintiff's business.

It is not slanderous *per se* to call a person a " crook," and a complaint founded upon such charge is subject to demurrer where there are no allegations as to special damages or that the word was used in respect to the plaintiff's business.

DOWLING and PAGE, JJ., dissent, with opinion.

APPEAL by the defendant, Margaret Brown, from that part of an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 11th day of August, 1920, granting plaintiff's motion for judgment on the pleadings as to the second cause of action, which pleadings consisted of an amended complaint and the demurrer thereto, and overruling the defendant's demurrer to the second cause of action.

*Frank E. Carstarphen* of counsel [*Charles K. Allen* and *John Hanson Kennard*, with him on the brief], for the appellant.

*John Vernon Bouvier, Jr.*, of counsel [*Rufus M. Overlander*, attorney], for the respondent.

SMITH, J.:

In the second cause of action plaintiff complains of the defendant for having falsely uttered in the hearing of third parties of and concerning the plaintiff, " Madame Villemin (meaning thereby the plaintiff) is a crook." This cause of action further alleges that such words imputed dishonesty and

moral turpitude to the plaintiff which would subject her, if guilty, to imprisonment for the crimes of obtaining money under false pretenses, theft and immorality, and that the third party in whose presence the words were uttered understood the said words so spoken of plaintiff by the defendant to mean that the plaintiff was a crook, thief and robber. No special damages are pleaded and the plaintiff rests her claim solely upon the ground that the statement was slanderous *per se.*

It is unnecessary here to review the distinction well recognized between the rules which govern an action for libel and an action for slander. Many words written might be libelous *per se* which would not be slanderous if merely spoken. The contention here is that the word " crook " is slanderous *per se,* because it imputes an indictable crime. This contention is, we think, unsupported by reason or authority. By common experience we know that the word " crook " is applied to persons who are not guilty of crime. In the Century Dictionary the word is defined as " a dishonest person; one who is crooked in conduct; a tricky or underhand schemer; a thief; a swindler." In the Oxford Dictionary crooked in referring to the quality of a person is defined as " deviating from rectitude or uprightness, not straightforward, dishonest, wrong, perverse."

In *Kuhne* v. *Ahlers* (45 Misc. Rep. 454) it was held that to call one a swindler was not slanderous *per se.* (Gaynor, J., Trial Term.) The same is held in *Chase* v. *Whitlock* (3 Hill, 139) and *Eisile* v. *Walther* (24 N. Y. St. Repr. 122). In *MacIntyre* v. *Fruchter* (148 N. Y. Supp. 786) the court said, per Tompkins, J.: " The words a ' black leg ' and ' swindler ' have been held to be not slanderous *per se.* *Chase* v. *Whitlock,* 3 Hill, 139; Cyc. vol. 25, p. 225, etc. There are other cases holding that to charge one with being a ' cheat ' and a ' damn black leg ' and a ' swindler ' is not slanderous unless used in connection with one's business or trade. The words ' lousy blackguard ' no more charge or import a crime than do the words ' cheat ' or ' black leg.' "

In *Saville* v. *Jardine* (2 H. Bl. 531) to charge one with being a swindler was held not to be actionable *per se.*

In *Phincle* v. *Vaughan* (12 Barb. 215) the words, " You

have sworn false under oath, you have lied under oath," were held not slanderous *per se*.

In *Savage* v. *Robery* (2 Salk. 694) it was held not actionable to call a person a cheat.

Within these authorities as well as within the common use and acceptation of the term, I am of the opinion that the use of the word " crook " as charged in the complaint cannot be held to be actionable *per se*, and in the absence of an allegation of special damage or that the word was used in respect of the plaintiff's business, no cause of action is stated.

The order so far as appealed from should, therefore, be reversed, with ten dollars costs and disbursements, and plaintiff's motion for judgment on the pleadings as to the second cause of action denied, with leave to the plaintiff to serve an amended complaint within twenty days upon payment of said costs.

CLARKE, P. J., and GREENBAUM, J., concur; DOWLING and PAGE, JJ., dissent.

DOWLING, J. (dissenting):

The second cause of action sets forth that plaintiff, a resident of the city of New York, has been for a number of years engaged in the business of renting out unfurnished rooms to tenants by the year in a building which she leases, and that she also leases a part thereof to a subtenant who conducts a high class restaurant therein; that she is largely and directly interested in the " University Francaise," the purpose of which is set forth; that defendant at the times thereinafter mentioned was a tenant of plaintiff, and often partook of refreshments served in said restaurant; that plaintiff, who is French by birth and related to prominent French families, entertained foreign notables visiting this country during the war, and she also arranged for and conducted lectures and French courses from which she derived a substantial income. Further, that plaintiff's business depends upon her good reputation and credit and the confidence reposed in her by the public; that she has always enjoyed an enviable reputation and the confidence of her neighbors as well as those with whom she has done business. It is then alleged that between the 1st day of October, 1918, and the 30th day of October, 1919, " defendant

First Department, November, 1920. [Vol. 193.

did wilfully and maliciously speak, utter and communicate certain various false, defamatory and slanderous words in the presence and hearing of one Mrs. Kowarsky, against and concerning the plaintiff, with the intent to injure, defame, disgrace, degrade and scandalize the plaintiff." The words were: "Madame Villemin (meaning thereby the plaintiff) is a crook." The innuendo laid is that these words imputed dishonesty and moral turpitude to plaintiff, which would subject her, if guilty, to imprisonment for the crimes of obtaining money under false pretenses, theft and immorality; that defendant well knew such charges were untrue, false and wholly unfounded, and that Mrs. Kowarsky "understood the said words so spoken by the defendant to mean that said plaintiff was a crook, thief and robber and it was in describing said plaintiff as such person that the said words were employed." No special damage is pleaded. To this second cause of action defendant has demurred, on the ground that it does not state facts sufficient to constitute a cause of action.

I recognize that the rule of liability for words published as a libel is quite different from those spoken as a slander. Undoubtedly the words in question would be held libelous. But as no special damage is pleaded, the plaintiff's right to recover must depend upon her being able to bring this case within the first class of cases enumerated in 25 Cyc. 264, wherein oral defamation is actionable, viz.: "(1) Words falsely spoken of a person which impute to the party the commission of some criminal offense involving moral turpitude for which the party, if the charge be true, may be indicted and punished." The law has been more lenient in enforcing liability for slanderous utterances as mere oral defamatory words are considered as transitory abuse, the result of the natural passions, and not having substance and body enough to constitute an injury by affecting the reputation. (*Bryam* v. *Aiken*, 65 Minn. 87.) But a person cannot falsely charge another even orally with being a criminal or committing crime, without paying damages therefor.

The question, therefore, is whether the words used should be deemed to accuse plaintiff of being a criminal, or having committed a crime involving moral turpitude; whether they would be so understood by one hearing them spoken who was

of ordinary and average intelligence; and whether the innuendo is justified by the language used.

The industry of the learned counsel for appellant has resulted in a very interesting collection of abusive and denunciatory words which while far from complimentary, have been judicially held not to be slanderous *per se*, and, therefore, not actionable. But the word " crook " has nowhere as yet been held to come within the category of innocuous verbal assaults, though it must be admitted it comes quite near to some of them.

A crook is necessarily crooked; and to be crooked has been a term of reproach for centuries. Thus in the King James version of the Holy Bible appears the sentence: " They have corrupted themselves; their spot is not the spot of his children; they are a perverse and crooked generation." (Deut. xxxii, 5.)

In the Douay translation of the Old Testament the verse thus appears: " They have sinned against him, and are none of his children in their filth; they are a wicked and perverse generation."

So Sir Francis Bacon wrote: " Whatsoever affairs pass such a man's hands, he crooketh them to his own ends; " and Bishop Taylor, " My will hath been used to crookedness and peevish morosity." What is crooked is necessarily bent, not straight, and March's Thesaurus defines it not only as " not straight " but as " dishonest." In Roget's Thesaurus it is included under the heading " Improbity." Stormonth's Dictionary defines " crooked " as meaning " without rectitude." Crooked has long been used as a term of reproach, and in Fuller's Worthies reference is made to the term " crooked as Crawley," referring to a river in Bedfordshire so tortuous in its course that at one point it was necessary to travel eighty miles to cover an actual distance between the place of departure and arrival of only eighteen miles. In like manner was applied the Americanism " crooked as a Virginia ·(or snake) fence," said of persons difficult to keep " straight." (2 Farmer & Henley, Dictionary of Slang, 217.) The appellation of " Crook-fingered Jack " was given to one of Captain Macheath's gang of highwaymen in Gay's " The Beggar's Opera." The " Slang Dictionary " defines " crooked " as " anything stolen."

First Department, November, 1920. [Vol. 193.

In *Midland Publishing Co.* v. *Implement Trade Journal Co.* (108 Mo. App. 223), which was a libel suit, one Calvin K. Reifsnider was referred to in a headline in the libelous article as follows: " Mr. Crooked K. Reifsnider Gets It In The Neck Again." By its decision the court held that this was a libel of and concerning Reifsnider individually and that the plaintiff corporation which he had founded and of which he was editor and manager, could not recover on the second count, charging such publication as a libel on plaintiff. In its opinion the court said (p. 233): " There is no covert meaning in any of the words used in the headline. They are not ambiguous and do not require an innuendo to explain the meaning of any of them or to apply them. Any ordinary reader can understand them. They charge Reifsnider with being ' crooked,' that is ' dishonest.' "

The word " crook " in its application to individuals has passed from what may have originally been the figurative manner of speech which forms the basis for slang into a settled and accepted meaning. Perhaps the primitive meaning of the word in its inoffensive sense of a shepherd's staff having one end curved or hooked, for catching the hinder leg of a sheep, may have suggested its application to those criminal gentry who delight in tripping up the unwary and profiting by their fall. At any rate, its first appearance was as a slang term or colloquialism, the source of so many words which ultimately have found general acceptance and recognition as a legitimate part of our language, so the general meaning now attributed to this word is not a very new one.

In John S. Farmer's valuable work on "Americanisms, Old and New," published in 1889, he defines crook as " a thief; swindler; one whose ways society regards as ' not straight.' " In illustration whereof he quotes from the Orange *Journal*, April 16, 1887: " Strange as the statement may seem, the public know nothing of the work of a really clever crook, and the police themselves know very little more. The explanation of this ignorance is a very simple one. A crook whose methods are exposed is a second-rate crook." In the accepted authority on " Slang and its Analogues, Past and Present," by John S. Farmer and W. E. Henley, published in 1891, " crook " is defined as "A thief; swindler; one who gets things ' on the

crook,' " which later phrase is said to be the antithesis of " on the straight " and in the illustration given is used in the sense of " dishonesty." To learn what meaning a word conveys to the hearer of average intelligence, cannot better be tested than by the meaning attributed to it in those sources of information to which such a person resorts for information, the dictionary.

The word " crook " includes, among other definitions, the following according to the dictionaries quoted:

*Standard:* "(Colloquial) A professional rogue; a criminal or one consorting with criminals; a person recognized by the authorities as belonging to the criminal class; swindler; sharp; cheat." In illustration of which it gives the following quotation from the New York *Sun* of June 19, 1891: " The slang word ' crook ' now bids fair to be recognized in the statutes and consequently to be adopted as good English in the courts of law. A bill regulating admissions to the prison at Marquette excludes, among other classes of individuals specified, those known to be ' crooks ' in police parlance."

*Century:* "A dishonest person; one who is crooked in conduct; a tricky or underhand schemer; a thief; a swindler."

*Oxford:* " One whose conduct is crooked; a dishonest person, swindler, sharper. U. S. Colloquial," quoting as follows: " 1886 — American local newspaper. The photographs of several English cracksmen along with one of a New York crook 1891 — H. Campbell, Darkness and Daylight, p. 470, Gamblers, pickpockets and other ' crooks ' abound."

*Webster*: "A person given to crooked or fraudulent practices; a swindler; sharper, thief, forger, or the like."

My conclusion is that the word " crook " in view of its commonly accepted meanings might properly be held by the jury to have been said and understood in the sense charged by the innuendo and, therefore, to have been slanderous *per se,* and that the order appealed from is right and should be affirmed, with ten dollars costs and disbursements.

PAGE, J., concurs.

Order so far as appealed from reversed, with ten dollars costs and disbursements, and motion denied, with leave to plaintiff to amend complaint upon payment of said costs.