ABRAHAM MISHKIN, Plaintiff, *v.* JOHN J. RORECK, Defendant.

Supreme Court, Special Term, Nassau County, July 28, 1952.

*Doran & Hurst* for defendant.

*Irving Cahn* for plaintiff.

CUFF, J. This motion is to dismiss for legal insufficiency (Rules Civ. Prac., rule 106) the second count of the complaint which alleges slander. The spoken words were: "You God damned son of a bitch; you lousy crook; you God damned bastard." Special damages are not pleaded. Plaintiff proceeds on the theory that the utterance is slanderous per se.

The only extrinsic facts alleged are: Plaintiff, a real estate broker, dealer and builder, is sixty-seven years old, bears a good reputation for honesty, uprighteousness and credit; the words were uttered at a golf club where an outing was in progress which was attended by about six hundred real estate builders and developers to whom plaintiff was well known and the words were heard by many of those present; that defendant assaulted plaintiff at the time.

On a motion of this kind the well-pleaded allegations of the complaint are deemed established. Even with that concession, I do not find that the words, contrary to plaintiff's argument, were spoken of plaintiff with reference to his business. If

plaintiff has a suit in slander, it must rest upon the principle of words actionable in themselves.

Counsel concentrate in their briefs upon the word " crook ", conceding that the other epithets are not actionable per se.

The Court of Appeals has not passed upon the word " crook " as a per se slanderous utterance, but the Appellate Divisions of the First and Second Departments have, and have arrived at opposite conclusions.

In 1920, the slander action of *Villemin* v. *Brown* (193 App. Div. 777) came before the First Department on an appeal from Special Term which had granted a motion by plaintiff for judgment on the pleadings where the second count of the complaint alleged that defendant said concerning the plaintiff: " Madam Villemin (meaning * * * plaintiff) is a crook." In her complaint that plaintiff proceeded upon the theory of slander per se, but also pleaded that the utterance imputed dishonesty and moral turpitude to her, subjecting her, if found guilty, to imprisonment for the crimes of obtaining money under false pretenses, theft and immorality; that the hearers so understood the words uttered. The divided court (3–2) held that " crook " as used, was not actionable per se.

Ten years later (1930) in the slander action, *Weiner* v. *Leviton* (230 App. Div. 312), the Appellate Division, Second Department, upheld Special Term, which had refused to dismiss a complaint for insufficiency where the utterance employed, completely unaided by innuendo, was " You dirty crook, you are the biggest crook on Bedford Avenue ", unanimously holding that " crook " is a slanderous per se term.

Between 1920 and 1930, there were two decisions holding " crook " was not slanderous per se (*Hofstadter* v. *Bienstock*, 213 App. Div. 807 [1925], Dowling, J., dissenting; *Eisenberg* v. *Reasenberg*, 133 Misc. 190 [1928]). In each instance, without analysis, the courts (both First Department) followed *Villemin* v. *Brown* (*supra*).

The case of *Harris* v. *New York, W. & B. Ry. Co.* (244 App. Div. 252 [1935]) was a First Department reversal of its Trial Term. It held that it was slanderous per se to call a person a " crook " under circumstances which pointed to a specific unlawful act, which act embraced all the elements contained in the rule laid down in *Brooker* v. *Coffin* (5 Johns. 188) which will be referred to again herein. The decision, therefore, was based upon the peculiar circumstances attendant upon the use of the word " crook ". Untermyer, J., incidentally, writing for the unanimous court in that decision, noted without comment the

fact that the Second Department did not follow the *Villemin* case (*supra*) in deciding *Weiner* v. *Leviton* (*supra*). The *Harris* case (*supra*), because the circumstances at the time of the utterance controlled the meaning of the words used, is no help at bar. Here, however, we are confronted with the word "crook" uttered in anger and nothing more.

In the case of *Bustanoby* v. *Baldridge* (N. Y. L. J., Feb. 28, 1941, p. 915, col. 7), KOCH, J. (1st Dept.), made some appropriate observations. He granted a motion to dismiss a complaint, bowing to the authority of *Villemin* v. *Brown* (*supra*), but allowed plaintiff to amend. The case ultimately came to trial on an amended complaint and was dismissed at the end of plaintiff's case by WASSERVOGEL, J. (N. Y. L. J., April 15, 1941, p. 1671, col. 1), who in effect followed the *Villemin* case, because he held that plaintiff's attempt to bring the case within *Harris* v. *New York, W. & B. Ry. Co.* (*supra*) had failed.

TAYLOR, J. (Kings Co. Ct.), held that "crook" was not slanderous per se and denied a motion to open a calendar default because, he said, the complaint would in any event be dismissed at Trial Term (*McKeon* v. *Shirk*, N. Y. L. J., April 14, 1926, p. 224, col. 3).

HOOLEY, J., recently held that "crook" was slanderous per se following, without analogy, the Second Department's *Weiner* v. *Leviton* (*supra*). (*Lendino* v. *Fiorenza*, N. Y. L. J., April 21, 1952, p. 1581, col. 6.)

In *Grossman* v. *Kameroff* (N. Y. L. J., Dec. 1, 1933, p. 2040, col. 4), in 1933, when I granted a motion to dismiss a slander complaint, I indicated, referring to the diversity of views between the two departments, that "I incline toward the Second Department ruling". This likewise was without analogy and as a determination can serve as no guide because the complaint was hopelessly insufficient.

It is clear that the courts are well divided on this word "crook" pleaded as slander per se. The rule which classifies per se slanderous utterances charging crime is relatively ancient and well settled in this State. (Seelman, Law of Libel and Slander, p. 599 *et seq.*; see, also, Newell, Slander and Libel [4th ed.], § 30, and cases cited under n. 17.)

*Brooker* v. *Coffin* (5 Johns. 188) seems to be the first attempt by an American court to define exactly what language charging a crime is slanderous per se. The rule established in that case, which has never been modified or distinguished, is (p. 191): "In case the charge, if true, will subject the party charged to an indictment for a crime involving moral turpitude, *or* subject

him to an infamous punishment, then the words will be in themselves actionable ''. (Italics supplied.)

Thus it appears that a slanderous per se utterance must charge an indictable crime which involves moral turpitude *or* one for which the punishment prescribed is infamous.

An '' indictable crime '' is one where a grand jury may indict the accused.

'' Infamous punishment '' in addition to capital punishment is '' imprisonment in a state prison or a penitentiary with or without hard labor ''. (2 Bouvier's Law Dictionary, p. 1553; *Mackin* v. *United States,* 117 U. S. 348; *Ex Parte Bain,* 121 U. S. 1.)

'' Moral turpitude  *  *  *  [is] an act of baseness, vileness or depravity in the private or social duties which a man owes to his fellow-men or to society in general, contrary to the accepted and customary rule of right and duty between man and man.'' (Newell, Slander and Libel [4th ed.], § 32.)

Words under test in this type of suit must be given their ordinary meaning (*Rovira* v. *Boget,* 240 N. Y. 314). At bar, we simply have defendant calling plaintiff a '' crook ''.

The final determination of this question is important. At present an anomaly exists in the city of New York where people may be called '' crooks '' on the Manhattan side of the East River, without per se liability, while the same characterization on the Brooklyn side of that river (about one mile away) creates liability per se.

In support of its holding that '' crook '' is not per se slanderous, the First Department, in the *Villemin* case (*supra*), gives the Century Dictionary definition as '' a dishonest person; one who is crooked in conduct; a tricky or underhand schemer; a thief; a swindler '' and cites the Oxford Dictionary for a definition of '' crooked '' as '' deviating from rectitude or uprightness, not straight-forward, dishonest, wrong, perverse '' (p. 778).

In support of its holding to the contrary *Weiner* v. *Leviton,* 230 App. Div. 312),the Second Department refers to '' crook '' as a colloquialism to which slang has given the meaning as '' one who violates the criminal laws '' and the court cites Murray's New English Dictionary wherein '' crook '' is defined as '' one whose conduct is crooked; a dishonest person, swindler, sharper.'' SCUDDER, J., in that opinion concludes (p. 314): '' I think the word has even acquired the meaning that a ' crook ' is one who violates the criminal laws. It is in my opinion synonymous with ' a criminal.' ''

In his reasoning, Justice SCUDDER cites *Pandolfo* v. *Bank of Benson* (273 F. 48) which held " crook " to be actionable per se. But that was a suit for libel! There are many accusations when expressed in writing (a writing provides an opportunity to reflect, not afforded when the accusation is spoken) which will support per se libel but would not support per se slander (Seelman, Law of Libel and Slander, par. 27, p. 632; *Villemin* v. *Brown, supra*). I do not think that the *Pandolfo* case (*supra*) aids in this borderline slander situation. Again, attention must be called to the fact that the opinion of SCUDDER, J., implies that to call a person " a criminal " is slanderous per se. A criminal, of course, is one who commits a crime—any crime. The per se rule set forth in *Brooker* v. *Coffin* (*supra*), does not include accusations of all crimes. The charges which that rule holds are per se slanderous are restricted to that certain kind of crime defined so minutely in the rule. Moreover, Professor Seelman states that there is no recorded case where the accusation " criminal " was ever held to be slanderous per se (Seelman, Law of Libel and Slander, par. 27, p. 632). A judge's charge at a trial to the effect that plaintiff must prove that " defendant had spoken words of and concerning [plaintiff], which, if true, would subject him to a criminal prosecution " was held erroneous and the judgment was reversed (*Quinn* v. *O'Gara*, 2 E. D. Smith 388). Merely calling a person " a criminal " falls without the limits of *Brooker* v. *Coffin* (*supra*).

Continuing on the subject of the definition of " crook ", DOWLING, J., in his dissent in the *Villemin* case (193 App. Div. 777, 779 *et seq.*), defining how " crook " is understood, traces the word into its ancient and biblical uses with a study of and quotations from old English literature as well as modern American writings and reference works; Justice DOWLING also quotes from old as well as modern dictionaries. His conclusion is that in effect, the word as used is slanderous per se because it was " understood in the sense charged by the innuendo " (p. 783). The innuendo he referred to stated the legal conclusion that the " words imputed dishonesty and moral turpitude to the plaintiff, which would subject her, if guilty, to imprisonment for the crimes of obtaining money under false pretenses, theft and immorality". If the learned DOWLING, J. and his learned codissenter, PAGE, J., had not given force to the innuendo, would they have held as they did? Such innuendo, which I consider defective pleading, will be discussed later.

In the prevailing opinion in the *Villemin* case (*supra*), SMITH, J., for the court, holds flatly that " crook ", as charged in the complaint, is not actionable per se. He makes no reference to the innuendo which means that according to the majority of the court the innuendo did not aid the utterance.

I think that language in a complaint which merely follows the words or substance of the rule as to per se utterances and asserts that the listeners so understood the charge is improperly pleaded innuendo — if it is innuendo at all. (*Ward* v. *Clark*, 2 Johns. 10; see, also, *Kinney* v. *Nash*, 3 N. Y. 177, where the court stresses that innuendo should state facts and circumstances.) See, also, *Yakavicze* v. *Valentukevicious* (84 Conn. 350, 355) where the Supreme Court of Errors of Connecticut said: " The innuendo in the complaint, alleging that by the words used the intent was to charge the crimes of cheating, embezzlement, and larceny, cannot determine the meaning."

I consider that the innuendo in the *Villemin* case (*supra*) was properly disregarded in the prevailing opinion and erroneously relied upon in the dissent. It is always for the court to determine if a statement, not amplified by innuendo, is slanderous per se (*Hunt* v. *Bennett*, 19 N. Y. 173; Newell, Slander and Libel [4th ed.], p. 204). Should there be some unexpressed base and vile meaning to words superficially innocent, innuendo may be supplied to give the full impact of the accusation.

The single point at issue is: Is the naked epithet " crook " per se slanderous?

Seelman, in his book, devotes an extended, enlightened and exhaustive discussion to the word " crook " in which he comments upon the divergent views of the First and Second Departments, referring to all adjudicated New York cases down to 1946. (See Law of Libel and Slander, pp. 630–633; Law of Libel and Slander [Supp., 1933–41], p. 157, and [Supp., 1941–45], p. 78.)

If we select from the definitions ascribed by the dictionaries to the word " crook " those that attribute to it the vilest, basest and most depraved meanings, we find, collectively, that it has these meanings: " dishonest person ", " crooked person ", " tricky person ", " underhand schemer ", " thief ", " swindler ", " professional rogue ", "criminal ", " consorter with criminals ", " of the criminal class ", " sharp ", " cheat ", " crooked in conduct ", " person given to crooked or fraudulent practices ". (Webster's New International Dictionary [2d ed.]; Funk & Wagnall's New Standard Dictionary; New Century Dictionary; Murray's New English Dictionary; Oxford Dic-

tionary; Black's Law Dictionary [4th ed.]; Farmer & Henley, Dictionary of Slang.)

Examination of the legal authorities reveals no decision which holds that any of the above definitions falls into the slanderous per se category (see Words and Phrases) except '' thief '' and '' forger '' to which I will refer later. On the other hand, some of those definitions have been subjected to judicial scrutiny in slander suits and have been found wanting as slanderous per se utterances, e.g.: '' dishonest '' — (*Fowles* v. *Bowen,* 30 N. Y. 20); '' swindler '' — (*Kuhne* v. *Ahlers,* 45 Misc. 454); '' rogue '' — (*Quinn* v. *O'Gara,* 2 E. D. Smith 388, *supra*); '' criminal '' — (Seelman, Law of Libel and Slander, p. 632), and '' cheat '' — (*MacIntyre* v. *Fruchter,* 148 N. Y. S. 786).

I will now treat with '' thief '' and '' forger '' given as definitions of '' crook '' by some dictionaries.

To call another '' a thief '' has been held to be actionable per se (*Boyle* v. *MacDougall,* 128 Misc. 225; *Gordon* v. *Hyman,* 129 Misc. 351).

All lexicographers, however, do not give to '' crook '' the meaning '' thief '', notably: Funk & Wagnall's New Standard Dictionary, Oxford Dictionary, Murray's New English Dictionary. Also, dictionaries generally ascribe to '' thief '' two meanings. Funk & Wagnall's New Standard Dictionary, for instance, gives the first, which it calls the commonly understood meaning, as: '' One who steals, especially one who steals furtively or without violence, as distinguished from a robber; in law, one who commits larceny; also, one who has stolen '' and the second meaning as: '' One who practices overreaching, deceit, etc.; one who deprives another of his equitable rights; as, a ballot *thief.*''

It will be observed that the first group of meanings classifies '' thief '' as a larcenist, (slanderous per se) while the second classifies him as tricky or dishonestly shrewd (not slanderous per se). While it is true that words are to be given their ordinary meaning in this type of litigation, the second choice of meanings in dictionaries is not necessarily to be ignored in favor of the first choice, especially where the first choice definition is in the minority among dictionary authorities, as is the case in defining '' crook ''. The question at all times is, how did the hearers understand the word? It is important to note on this phase of the discussion that no decision adopts the definition of '' crook '' as '' thief ''. Only a small number of dictionaries give to it that definition, as above indicated. The weight of authority is against so defining it.

" Crook " is not generally defined as " forger " (Webster and Black's Law Dictionary give that definition). To say of one that, he is a " forger " is slanderous per se (*Rabinowitz* v. *Manhattan Bakery,* N. Y. L. J., Aug. 30, 1934, p. 583, col. 3, HOFSTADTER, J.). No decision adopts the definition of " crook " as " forger ". I must hold that the weight of authority is against such a definition.

The dictionary meanings prompt another observation about " crook ". In every instance the whole definition indicates that a crook habitually maintains a dishonest attitude toward others for his own monetary advantage. The definitions do not suggest his forceful application of that attitude. They refer to a person who makes a practice of taking advantage of others with respect to money or property and succeeds because of his shrewdness, sharpness or cheating, to which he adds dishonesty when that extreme is helpful in attaining his goal. The amount of money or value of property or nature of advantage does not appear in those definitions. They cover and relate in most instances, to acts to which the civil remedy of fraud applies. They seem to indicate that a crook's acts fall just short of serious crime, such as: dishonest person, tricky person, underhand schemer, professional rogue, sharp, cheat. In all the definitions a wide field of action by the " crook " seems to be covered, with specifics notably omitted. Those are the impressions I gather from the dictionary meanings of " crook ".

It is required, it must be borne in mind, that in order to establish particular language as being per se slanderous, that the utterance of the defendant fits the definitive rule of law (*Brooker* v. *Coffin, supra*). The hearers must have understood the defendant to have charged that the plaintiff had committed an indictable crime — an act which involved moral turpitude — or one which would, if found guilty, subject him to infamous punishment.

In the language used at bar, what did the hearers understand plaintiff had done according to defendant, to be dubbed a " crook "? If defendant was attempting to say that plaintiff was a larcenist, burglar, robber, counterfeiter, would he use the characterization " crook "? I fear that that is not our experience.

A " crook ", as used in ordinary conversation, it seems to me, belongs to the lesser of the criminal classes whose activities treat with his acquiring money and property by reason of sharp practices, but without force. Of course, if the money is in large enough amounts or the property of high enough values, such

person could subject himself to indictment for a crime of moral turpitude or if guilty, to infamous punishment. But do those who hear a person called a " crook " with nothing more said, understand that the accused had committed an offense of such magnitude? It would be unrealistic for this court to come to such a conclusion. SMITH, J., in the prevailing opinion in the *Villemin* (*supra,* p. 778) case observes: " By common experience we know that * * * ' crook ' is applied to persons who are not guilty of crime."

I am constrained to hold, with the utmost deference to the eminent jurists who have decided otherwise, that " crook ", without innuendo, is not slanderous per se.

Defendant's motion to dismiss the second count of the complaint is granted.