**ALWIN CONSTRUCTION COMPANY, INC., and others similarly situated, Plaintiff,**

v.

**Dan W. LUFKIN, Individually and as Commissioner of Environmental Protection of the State of Connecticut, Defendant.**

**Civ. A. No. B–725.**

United States District Court,
D. Connecticut.

June 28, 1973.

14.  See note 3.

Lepofsky & Lepofsky by Melvin J. Silverman, Norwalk, Conn., for plaintiff.

Robert K. Killian, Atty. Gen., Hartford, Conn., by Brian E. O'Neill, Asst. Atty. Gen., for defendant.

## MEMORANDUM OF DECISION

LUMBARD,* Circuit Judge:

Alwin Construction Company, Inc. (Alwin) seeks declaratory and injunctive relief, as well as damages, against Dan W. Lufkin, Commissioner of Envi-

ronmental Protection of the State of Connecticut, claiming that the issuance on February 7, 1973 of an "order to abate pollution," and its recordation, also on February 7, 1973, on the land records of the town of Warren were done maliciously, without any factual or legal basis, for the purpose of forcing Alwin to reduce the number of lots which it could create and sell from the "Arrowpoint" and "Waramaug Heights" subdivision in the town of Warren. Alwin claims that the Commissioner's malicious and unauthorized actions violate its rights under the due process clause of the fourteenth amendment and 42 U. S.C. § 1983. Plaintiff has moved for a preliminary injunction directing Commissioner Lufkin to rescind the "order to abate pollution" and to prepare and record upon the land records of the town of Warren a release and invalidation of the order. Plaintiff also seeks to enjoin the defendant from issuing such orders in the future until such time as he has adopted regulations.

Defendant has moved pursuant to F. R.Civ.P. 12(b)(1), (2) and (6) to dismiss the complaint for lack of jurisdiction over the subject matter, lack of jurisdiction over Commissioner Lufkin in his official capacity, and failure to state a claim upon which relief can be granted. From witnesses called by the parties on the hearing for a preliminary injunction on May 23 and June 1, 1973, the following facts, virtually undisputed, were developed.

Alwin is a Connecticut corporation which owns two adjoining parcels of land—"Arrowpoint" and "Waramaug Heights"—at a site on Lake Waramaug in Warren, Connecticut. "Arrowpoint" is a 60 acre peninsula extending out into Lake Waramaug; "Waramaug Heights," which is approximately 200 acres, runs inland from the neck of the "Arrowpoint" peninsula and is located on somewhat higher ground. Alwin has constructed no facilities on either parcel and does not intend to do so; its busi-

* Sitting by designation.

ness consists solely of subdividing the parcels and selling unimproved lots to individuals for purposes of residential development. It is now in the process of attempting to sell one acre lots on "Arrowpoint" at a price of approximately $20,000 per lot. In the near future Alwin hopes to begin selling two acre lots on "Waramaug Heights." Since Alwin has constructed no sewers on the property, anyone buying one of these lots and building a home would have to construct an individual septic tank system to dispose of sewage.

On February 7, 1973, Commissioner Lufkin, purportedly acting under Connecticut's Water Pollution Control law, Conn.Gen.Stat.Ann. ch. 474a, § 25–54a, et seq., (1971 Supplement), served upon plaintiff and caused to be recorded on the land records in the town of Warren the "order to abate pollution" which is the subject of the present proceedings.[1] The order, which is reproduced in the margin,[2] contains the finding that if

---

1. Section 25–54b states that an " 'order to abate pollution' includes an order to abate existing pollution or to prevent reasonably anticipated sources of pollution."

   Section 25–54k states: "If the commissioner finds that any person is maintaining any facility or condition which reasonably can be expected to create a source of pollution to the waters of the state, he shall issue an order to such person maintaining such facility or condition to take the necessary steps to correct such potential source of pollution."

   Section 25–54m states: "When the commissioner issues an order to any person to abate pollution, he may cause a certified copy thereof to be filed on the land records in the town wherein the land is located . . . ."

2. "STATE OF CONNECTICUT
   VS.
   ALWIN CONSTRUCTION COMPANY, INC.
   IN THE MATTER OF AN ORDER TO THE ALWIN CONSTRUCTION COMPANY, INC. TO ABATE POLLUTION
   ORDER
   Having found that the Alwin Construction Company, Inc. is the owner of certain real property in the Town of Warren, County of Litchfield, on which a subdivision entitled "Arrowpoint" and "Waramaug Heights" is proposed, and which if developed can reasonably be expected to create a source of pollution to the waters of the State under the provisions of Chapter 474a of the 1971 Supplement to the General Statutes, the Commissioner of Environmental Protection acting under Section 25–54k hereby Orders the Alwin Construction Company, Inc., and its successors and assigns in interest, to take such action as is necessary to:
   1. Prepare a detailed engineering report acceptable to the Commissioner of Environmental Protection which shall define, describe, and analyze the area and location of sewage disposal facilities for each

   lot in the "Arrowpoint" and "Waramaug Heights" subdivision, giving special attention to soil characteristics, possible hydrological interactions among the individual systems, well sites, any proposed storm or subsurface drains, and the potential of pollution of Lake Waramaug, including but not limited to eutrophication.
   2. Submit to the Commissioner of Environmental Protection a plan of development based on the aforementioned engineering report that will insure that surface water runoff, proposed storm or subsurface drains, and the sewage disposal facilities for each lot or combination of lots within the subdivision will not create pollution, including but not limited to eutrophication, of the waters of the State. Such plan may include, but shall not be limited to, restricting the number of lots which may be developed within the subdivision.
   Alwin Construction Company, Inc., and its successors and assigns in interest, are further Ordered to accomplish the above described program except as may be revised by the Commissioner of Environmental Protection, in accordance with the following schedule:
   A) On or before March 30, 1973, Alwin Construction Company, Inc. shall certify to the Commissioner that it shall not, prior to the approval by the Commissioner of Environmental Protection of the engineering report and plan of development defined above, (1) apply for a permit for a new discharge to the waters of the state as required by Section 25–54i of Chapter 474a of the 1971 Supplement to the General Statutes which shall be required for each individual sewage disposal facility or (2) create any individual sewage disposal facility or storm or subsurface drain which reasonably can be expected to create a source of pollution to the waters of the state;
   B) On or before 30 days after any sale, transfer, assignment or other conveyance

"Arrowpoint" and "Waramaug Heights" are developed, they "can reasonably be expected to create a source of pollution to the waters of the state." This finding was arrived at by Commissioner Lufkin after consultation with experts in the Department of Environmental Protection. It seems that because of bedrock very near to the surface there is some doubt as to whether water or effluent from septic tanks will be able to sink into the ground. If they do not, since there is almost total drainage of surface and subsurface water on "Arrowpoint" and "Waramaug Heights" into Lake Waramaug, substantial amounts of effluent from septic tanks will almost certainly end up flowing into Lake Waramaug. The order therefore requires plaintiff to prepare an engineering report and a plan of development to insure that the subdivision does not create pollution and places certain restrictions on development of the land by plaintiff and those purchasing lots from plaintiff until the Commissioner approves both the engineering report and the development plan. The order specifically notes the possibility of limiting the number of lots to be developed.

■■ The complaint states that Connecticut's Water Pollution Control law does not authorize the entry of this order or its recordation and asserts that the Commissioner's actions were done maliciously in order to injure plaintiff.

The complaint further states that the issuance and recordation of this order has caused prospective purchasers of lots, some already under contract, to refuse to consummate their purchases and that plaintiff's land has been effectively rendered unsalable by defendant's actions. These allegations state a sufficient interference with plaintiff's property interests to support a claim of violation of due process. Cf. Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972). Since the inability to sell lots has deprived Alwin of substantial sums of money which would have constituted the proceeds of such sales, jurisdiction exists under both 28 U.S.C. § 1331 and 28 U.S.C. § 1343(3). As to whether Commissioner Lufkin in his official capacity is a "person" within the meaning of section 1983, it now seems settled that he is for purposes of injunctive relief. Adams v. City of Park Ridge, 293 F.2d 585, 587 (7th Cir. 1961); Gonzales v. Doe, 476 F.2d 680 (2d Cir., 1973). Accordingly, the motion to dismiss is in all respects denied.

■■ The plaintiff produced no evidence that the Commissioner in issuing the order February 7, 1973 acted maliciously. Stripped of this ingredient, plaintiff's claims involve nothing more than questions of interpretation of hitherto unconstrued sections of Connecticut's recent Water Pollution Control law, which was enacted in 1971—that is,

of interest in such property, Alwin Construction Company, Inc., shall serve written notice to the Commissioner of Environmental Protection of such sale, transfer, assignment or other conveyance;

C) On or before 30 days after any sale, transfer, assignment or other conveyance of interest in such property to him, each successor or assign of such interest shall certify to the Commissioner of Environmental Protection that he shall not, prior to the approval by the Commissioner of Environmental Protection of the engineering report and plan of development defined above, (1) apply for a permit for

a new discharge to the waters of the state as required by Section 25–54i of Chapter 474a of the 1971 Supplement to the General Statutes which shall be required for each individual sewage disposal facility, or (2) create any individual sewage disposal facility or storm or subsurface drain which reasonably can be expected to create a source of pollution to the waters of the state.

Entered as the Order of the Commissioner of Environmental Protection this 7th day of February, 1973.

/s/
_____
Dan W. Lufkin, Commissioner"

whether the act of subdividing land, without more, constitutes a "condition" which presents a potential source of pollution within the meaning of section 25–54k, whether section 25–54m authorizes recordation of orders to abate *potential* sources of pollution, and finally whether the statute requires the Commissioner to promulgate regulations which he has thus far failed to do. There is no allegation that the statute is unconstitutional.[3] These issues present no federal questions. See International Harvester Co. v. Kansas City, 308 F.2d 35, 38 (10th Cir. 1962), cert. denied, 371 U.S. 948, 83 S.Ct. 503, 9 L.Ed.2d 498 (1963); Kortz v. Ellingson, 181 F.Supp. 857 (D.Colo.1960). Furthermore, it must be noted that plaintiff's contentions have already been litigated during six days of hearings in the recently completed administrative hearing provided for by statute. See Conn.Gen.Stat.Ann. ch. 474a, § 25–54k. From the final determination of the Commissioner based on this hearing Alwin has the right to appeal to the Court of Common Pleas for Hartford County. Conn.Gen.Stat. Ann. ch. 474a, § 25–54p. Plaintiff's claims should receive a just and speedy determination in the state courts. Thus, even if it is assumed that a federal question is presented without a showing of malicious enforcement, this case is a proper one for the exercise of the court's equitable discretion to abstain, leaving the resolution of these unsettled issues of state law to the state courts. Alabama Pub. Serv. Comm. v. Southern R. Co., 341 U.S. 341, 71 S.Ct. 762, 95 L. Ed. 1002; Wright, Federal Courts § 52, pp. 199–200 (2d ed. 1970).

The motion to dismiss is denied.

The motion for a preliminary injunction is denied.

So ordered.

3. Although there is language in the complaint and in Plaintiff's Supplemental Brief in Support of Temporary Relief which indicates that Alwin believes the statute to be unconstitutional, during argument of its motion for a preliminary injunction Alwin disavowed any intention of challenging the constitutionality of the statute at this time.