SAMUEL F. PRIVITERA, JR., et al., Appellants, v TOWN OF PHELPS et al., Respondents.

Fourth Department, January 23, 1981

APPEARANCES OF COUNSEL

*Robert F. Wood, P. C. (Kenneth I. Markham* of counsel), for appellants.

*Nixon, Hargrave, Devans & Doyle (Edward J. Burns* of counsel), for Town of Phelps, respondent.

*Max Cohen* for Roy DeBar, respondent.

## OPINION OF THE COURT

SIMONS, J.

The central question on this appeal is whether it is slander per se to charge another with membership in the Mafia. We hold that it is not, but we find that plaintiffs have sufficiently pleaded special damages to sustain their slander cause of action.

Plaintiffs allege in their complaint that in 1977 they were owners of real property located in the defendant Town of Phelps and that defendant DeBar was the head of the town zoning board and its Building Inspector. On June 2, plaintiffs appeared in DeBar's office with contract purchasers of their land named Durham, intending to assist them in obtaining a building permit as a necessary precondition of the sale. They claim that DeBar refused to issue the permit because, as he stated to the Durhams, plaintiff Samuel Privitera is a "member of the Mafia", "a criminal", "[he] has the police at his house all of the time because he is a bad person". The complaint alleges that DeBar also stated to the Durhams that both plaintiffs are in the "mob". Based upon this incident, plaintiffs bring this suit against the town and DeBar alleging causes of action for slander, negligence, violation of their civil rights under section 1983 *et seq.* of title 42 of the United States Code, tortious interference with their business, contract and property rights, and for emotional injury and loss of consortium. They seek compensatory and punitive damages.

Special Term held the complaint failed to state any cause of action and ordered dismissal but conditioned its order by granting plaintiffs leave to replead within 20 days. Plaintiffs have failed to do so, or to stay entry of the final judgment which has now been entered on the order. Accordingly,

this appeal is deemed to be from the final judgment (see *National Bank of North Amer. v Kory*, 63 AD2d 579).

## I

A complaint alleging slander is legally sufficient if it pleads the utterance of words of certain classes held actionable per se. All other slander is actionable only upon allegation and proof of special damage (see, generally, *Danko v Woolworth Co.*, 29 AD2d 855; *Klein v McGauley*, 29 AD2d 418, 420-421; *Jordan v Lewis*, 20 AD2d 773; *Gurtler v Union Parts Mfg. Co.*, 285 App Div 643, affd 1 NY2d 5). The distinction between spoken words which are actionable per se and those that are not is between certain classes of accusation judged so noxious that pecuniary damage is the natural and probable consequence of the words spoken and those which require proof of resulting injury. It is not that the words are more or less offensive, but rather that their injurious character is a matter of common knowledge in the first instance, permitting the court to take judicial notice of it, and not so in the latter.

It has been said that words constitute slander per se if they impute: (1) the commission of a crime, (2) a loathsome disease, (3) unchaste behavior in a woman, or (4) homosexual behavior, or if they (5) affect plaintiff in his trade, occupation or profession (see, generally, *Moore v Francis*, 121 NY 199, 203; 2 NY PJI 45-47 [1980 Supp]; 34 NY Jur, Libel and Slander, § 14 *et seq.*; Prosser, Torts [4th ed], § 112, pp 754-760; 1 Harper and James, The Law of Torts, § 5.9, pp 374-375; Restatement, Torts 2d, § 570). Only one class need concern us here. Either the offending words in this case charged plaintiffs with a crime or plaintiffs must plead and prove special damage.

Long ago, the Court of Appeals held that before words charging plaintiff with a crime became actionable per se, they must impute to plaintiff the commission of an indictable offense upon conviction of which punishment may be inflicted (*Anonymous*, 60 NY 262, 264; *Brooker v Coffin*, 5 Johns 188; but see 2 Seelman, Libel and Slander [rev ed], pp 869-870). The rule has been criticized as needlessly restrictive and because it makes civil recovery dependent

upon the changing terminology and procedures of the criminal law (see Prosser, Torts [4th ed], p 755; 1 Harper and James, The Law of Torts, § 5.10; 2 NY PJI 45 [1980 Supp]).[1] Nevertheless, the Court of Appeals has not seriously reconsidered or relaxed it apparently for almost 100 years.

The complaint before us does not allege slander per se either directly or by properly pleaded innuendo because it does not allege that DeBar charged plaintiffs with an indictable offense. The Mafia, the dictionary tells us, is a "secret criminal society". But that is not enough. People are indicted for what they do, not for their associations or beliefs, and membership in an organization, even membership in an organization having a criminal purpose, is not an indictable offense (see *Gurtler v Union Parts Mfg. Co.*, 285 App Div 643, affd 1 NY2d 5, *supra* [charge that plaintiff was a Communist]). Nor is it slander per se to charge that one is a "bad man", or a "criminal", or a "crook" *(Klein v McGauley*, 29 AD2d 418, *supra; Villemin v Brown*, 193 App Div 777). Such words are too general to permit defendant to justify the accusation and to hold them actionable per se imposes an undesirable restraint on expression. To come within the class, the words must charge plaintiff with a specific identifiable offense *(Klein v McGauley, supra*, p 421).

Plaintiffs point out that it is not necessary that the accusation charge a crime in technical language; it is enough that it impute a criminal offense (see *Lander v Wald*, 218 App Div 514, affd 245 NY 590; *Nowark v Maguire*, 22 AD 2d 901; Restatement, Torts 2d, § 571, comment *c*). Thus,

---

1. Professors Harper and James assert that the rule found in section 571 of the Restatement of Torts, second, represents the great weight of American authority. The Restatement states that words are actionable per se if they impute to plaintiff criminal conduct which may be punished by imprisonment in a State or Federal prison (whether plaintiff is subject to such imprisonment or not [see comment *b*]), or if they involve moral turpitude. The first clause, imprisonment, is but another way of saying the charge is serious because the Legislature, reflecting contemporary attitudes, has found it so. The second, moral turpitude, provides some flexibility for crimes not indictable but suggesting general public condemnation regardless of the term of imprisonment involved (e.g., indecent exposure). Prosser contends that the courts generally are moving to the position that words are actionable without proof of damages if they charge a person with acts involving a major social disgrace (Prosser, Torts [4th ed], pp 754-756).

they claim, and the dissent agrees, that the complaint is sufficient because by dictionary definition the Mafia engages in "racketeering", "peddling narcotics" and "gambling".[2] Unquestionably, words implying criminal conduct, especially words loaded with the emotional freight of "Mafia", are offensive and hold the plaintiff up to contempt. But they are not slanderous per se unless they specify a crime or a crime is readily apparent from properly pleaded innuendo (see *Tracy v Newsday, Inc.*, 5 NY2d 134; *Selkowe v Bleicher*, 286 App Div 1095, 1096; Prosser, Torts [4th ed], pp 748-749; and cf. *Harris v New York, Westchester & Boston Ry. Co.*, 244 App Div 252). The law governing slander differs in this respect from the law governing libel because of the nature of the wrong. The spoken accusation, as distinguished from the written one, is usually unpremeditated, made in the heat of anger, undiscriminating and of limited circulation whereas written accusations usually follow some premeditation and are permanent (1 Seelman, Libel and Slander [rev ed], pp 1-2). In the frequently quoted words of Chief Judge CARDOZO: "Many things that are defamatory may be said with impunity through the medium of speech. Not so, however, when speech is caught upon the wing and transmuted into print. What gives the sting to the writing is its permanence of form. The spoken word dissolves, but the written one abides and 'perpetuates the scandal' " *(Ostrowe v Lee*, 256 NY 36, 39).

## II

Though we do not find DeBar's words slanderous per se, we hold that the complaint may stand because special damages are pleaded, albeit imperfectly. Plaintiffs allege in the "wherefore" clause of the complaint that as a result of defendants' accusation they lost the sale of their property to the Durhams to their damage of $1,000,000. We harbor

---

2. There are several definitions for "Mafia". Webster's New Twentieth Century Dictionary [2d ed, 1964] defines it as: "in Sicily, a popular hostility to law and government; an alleged secret society * * * for purposes of vengeance, reprisal, and backmail." More recently Webster's Third New International Dictionary [1971] defines "Mafia" as "a secret organization composed chiefly of criminal elements and [usually] held to control racketeering, peddling of narcotics, gambling, and other illicit activities throughout the world".

some doubt that the pecuniary damage resulting from the loss of the sale of residential land in the rural township of Phelps, New York equals $1,000,000, but undoubtedly that sum is intended to represent both special damages and also general damages which plaintiffs may recover once their cause of action is sustained (see Restatement, Torts 2d, § 575, comment *a*). The exact damage claimed from the loss of the sale may be determined by bill of particulars *(Penn-Ohio Steel Corp. v Allis-Chalmers Mfg. Co.,* 9 AD2d 620) but by identifying a specific sale and naming the parties to it, plaintiffs have sufficiently itemized the special loss so that defendants may meet the claim and defend against it (see *Reporters' Assn. of Amer. v Sun Print. & Pub. Assn.,* 186 NY 437, 442-443; *McCullough v Certain Teed Prods. Corp.,* 70 AD2d 771; *Murphy v Klein,* 12 AD2d 683; cf. *Lincoln First Bank of Rochester v Siegel,* 60 AD2d 270, 280).

### III

The fifth cause of action seeks to recover damages for emotional and physical distress resulting from the slander and for loss of consortium. It is appropriately pleaded and may stand (see *Garrison v Sun Print. & Pub. Assn.,* 207 NY 1; Restatement, Torts 2d, § 623).

### IV

In the remaining causes of action, plaintiffs allege various legal theories by which they seek to impose liability on defendants for damages resulting from defendants' failure to issue the building permit. It is sufficient answer to those claims that there has been no failure to issue a permit because plaintiffs have not pursued their administrative remedies. It is doubtful that they have a cause of action for such conduct in any event (see *Matter of Town of Cheektowaga v City of Buffalo,* 67 AD2d 812; *Rottkamp v Young,* 21 AD2d 373, affd 15 NY2d 831), but until they exhaust the procedures for administrative review, they have not been deprived of the use of their land and redress must be limited to the slander claim. Accordingly, the causes of action for negligence and interference require

no comment, but we address briefly the claim under the Civil Rights Act (US Code, tit 42, § 1983).

To state a claim under the act, plaintiffs must allege: (1) that some person has deprived them of a Federal right and (2) that the person who deprived them of that right acted under color of State or territorial law *(Gomez v Toledo,* 446 US 635, 640; *Zarcone v Perry,* 78 AD2d 70). A municipality is a "person" within the intendment of the act (see *Monell v New York City Dept. of Social Servs.,* 436 US 658), and it is established that the acquisition, enjoyment and alienation of property are among those basic constitutional rights the act protects (see *Lynch v Household Fin. Corp.,* 405 US 538, 544; *Jones v Mayer Co.,* 392 US 409, 432). Thus, assuming that DeBar, by his conduct, restricted the alienation of plaintiffs' property, plaintiffs must also allege and prove that his conduct was a matter of official village policy (or custom which had achieved the status of policy) for a municipality is not liable in tort under section 1983 for the acts of an officer or employee solely on the theory of *respondeat superior (Monell v New York City Dept. of Social Servs., supra,* pp 690-691; *Smith v County of Livingston,* 69 AD2d 993, 995). Plaintiffs allege only that DeBar's slander and prior similar utterances were malicious and part of a continuing course of conduct by which defendants intended to defame plaintiffs and prevent the sale of their real estate, allegations insufficient to state a cause of action under the act. But even more significantly, plaintiffs' claim is essentially one for slander, not unlawful restraint of property, and section 1983 affords no right of action for defamation *(Paul v Davis,* 424 US 693; cf. *Martin v Merola,* 532 F2d 191). Thus, their case is distinguishable from *Alwin Constr. Co. v Lufkin* (360 F Supp 1119) upon which they rely. In *Alwin Constr.,* the complaint alleged that the State Commissioner of Environmental Protection maliciously issued an unauthorized order to "abate pollution", recorded it and thereby prevented plaintiff real estate developer from selling lots until the size of the lots was altered.

The judgment should be modified to deny defendants' motion to dismiss plaintiffs' first and fifth causes of action, and as modified, the judgment should be affirmed.

CARDAMONE, J. (concurring). This is a slander case. The defendant charged plaintiff with being "a member of the Mafia and a criminal." At issue on this appeal is whether that utterance constitutes slander per se. The majority holds that it does not. I disagree.

There are three grounds upon which this complaint should be sustained: (1) the words used charge plaintiff with indictable offenses under New York law; (2) they also charge plaintiff with an offense indictable under Federal law; and (3) in the context in which the words were spoken, a listener would infer that plaintiff was a convicted criminal.

Special Term dismissed the complaint. To determine whether the allegations of plaintiff's first cause of action state a viable cause of action for slander per se, we are required to give it "the benefit of every possible favorable inference" to sustain its validity (Rovello v Orofino Realty Co., 40 NY2d 633, 634). The facts may be simply stated. The defendant Roy DeBar is an official of the defendant Town of Phelps and is responsible for granting or denying building permits. In 1977, plaintiffs Samuel F. and Kathleen Privitera advertised that real property they owned in the Town of Phelps was for sale. A couple named Durham offered to purchase plaintiffs' land contingent upon obtaining from the Town of Phelps a permit to construct a residence on the plaintiffs' property. On June 2, 1977 the Durhams appeared before defendant DeBar to make an application for a building permit. DeBar refused to grant the permit stating that "Samuel F. Privitera, Jr. is a member of the Mafia and a criminal" and that "Samuel F. Privitera, Jr. has the police at his house all the time because he is a bad person."

To complete the factual setting in which these words were spoken concerning plaintiff, it is necessary briefly to recall some of the background that surrounds the word "Mafia". La Cosa Nostra ("our thing" or "our property") first caught the public's attention in the 1920's during the Capone era in Chicago prior to the 1933 repeal of prohibition by the Twenty-First Amendment to the United States Constitution. From illegal liquor to white slavery and then to gambling, drugs and usurious loans, the Mafia has from

its beginning in this country down to the present been engaged in criminal activity. These activities have become widely publicized and are a fact of modern life. Those unaware of the criminal ventures of Al Capone have now been educated by the long-running TV series "The Untouchables," based on his life. More recently, Mario Puzo's book, "The Godfather", followed by two movies adapted from it have focused on the essentially amoral behavior and pervasive criminality of members of the Mafia. Most recently, as a result of some success by law enforcement officials in the prosecution of "mob" members, the news media have intensified their efforts to expose to public view the inner workings and origins of this cancer in our society. Examples are: *Newsweek* (The New Mafia, Jan. 5, 1981, pp 34-43), CBS television documentary "60 Minutes" (Jan. 4, 1981), *The Wall Street Journal*, Crime in Calabria (Dec. 29, 1980, p 1, col 1), ABC television series "Nightline" on the Mafia in the United States (Jan. 7, 1981).

With this factual background in mind we turn to the law on slander per se in New York. Concededly it is more difficult successfully to allege and prove slander per se than libel. Written words may be libelous when they will not be actionable if merely spoken (34 NY Jur, Libel and Slander, § 4, p 472). This centuries-old distinction between libel and slander is based upon the fact that the spoken word is—in theory—soon forgotten, while the written or printed word is a more permanent record (1 Seelman, Libel and Slander [rev ed], pp 1, 2). Since 1809 a plaintiff in New York has had a viable action for slander where the words uttered "subject the party charged to an indictment for a crime involving moral turpitude, or subject him to an infamous punishment" *(Brooker v Coffin,* 5 Johns 188, 191).

The cases illustrate that if the words are uttered in a factual context where a listener would infer or impute criminal conduct to plaintiff, they are slanderous per se. Thus, this court held in an old case that to accuse another of being an "anarchist" states a viable cause of action for slander per se *(Von Gerichten v Seitz,* 94 App Div 130). To call one "a thief" is slanderous per se *(Dallin v Mayer,* 122 App Div 676). Again, where the words uttered were

that plaintiff "took" some merchandise, it was held that this imputed to the plaintiff a misdemeanor and was slanderous per se *(Selig v Alexander*, 185 App Div 322, 324). Where the slander consisted of calling plaintiff "a subversive", the court held that this charged plaintiff with criminal activities sufficient to constitute slander per se *(Selkowe v Bleicher*, 286 App Div 1095, 1096). To charge that plaintiff "aided and abetted a criminal" is actionable as slander per se "if uttered in such a factual context that listeners would reasonably infer connotations of moral turpitude" *(Danko v Woolworth Co.*, 29 AD2d 855). Similarly, to call one a "bootlegger" definitely denotes, in the public mind, one who violated the liquor laws and is, therefore, slanderous per se *(Kammerer v Sachs*, 131 Misc 640, 642). The rule which has evolved from the decisional law is that in order to be slanderous per se, the words uttered must charge plaintiff with an indictable offense. The epithet that plaintiff "is a member of the Mafia and a criminal" does just that.

From the background recited, it is abundantly evident that the public correctly believes that members of the Mafia are engaged in a wide variety of criminal activity not limited to but including gambling, pornography, loan-sharking, political corruption, drug trade, labor extortion and racketeering, larceny, assault and murder. Mafia members engage in one or more of these crimes at one time or another either directly or indirectly, by soliciting or commanding that others engage in such conduct. All of these activities are indictable offenses under the Penal Law of New York. The word "Mafia" is itself defined as a "secret criminal society; a secret society of political terrorists; a secret organization composed chiefly of criminal elements and [usually] held to control racketeering, peddling of narcotics, gambling, and other illicit activities throughout the world" (Webster's New Collegiate Dictionary). The very word "Mafia" means "lawlessness" according to the American Heritage Dictionary of the English Language (New College Ed, 1976).

Most significant is title 9 of the Organized Crime Control Act of 1970 (84 US Stat 922, 941) entitled Racketeer Influenced and Corrupt Organizations Act (US Code, tit

18, § 1961 *et seq.).* The thrust of this Federal law is directed against organized criminal enterprises and organizations. Its legislative history makes clear that it is aimed at the Mafia (US Code Cong & Admin News, 1970, vol 2, p 4091; Comment, Title IX of the Organized Crime Control Act of 1970: An Analysis of Issues Arising in its Interpretation, 27 De Paul L Rev 89; Wilson, The Threat of Organized Crime: Highlighting the Challenging New Frontiers in Criminal Law, 46 Notre Dame Lawyer 41; McClellan, The Organized Crime Act [S. 30] Or Its Critics: Which Threatens Civil Liberties?, Notre Dame Lawyer 55). The accusation that one is a member of the Mafia imputes to that person an indictable Federal crime punishable by imprisonment. It has been reported that at least one New York City Mafia member has been convicted recently by a jury under this Federal act of extortion, fraud and being a Mafia boss *(Newsweek,* The New Mafia, Jan. 5, 1981, p 41). It is clear that the indictable crime test is not limited to crimes indictable only in New York courts but also includes charges of crimes indictable in a Federal court (34 NY Jur, Libel and Slander, § 12; 2 Seelman, Libel and Slander, [rev ed], pp 870-871).

Moreover, the words in this case charge plaintiff with offenses of serious moral turpitude and would be actionable per se under the modern view. Most jurisdictions have broadened the 170-year-old New York rule which requires for slander per se that words charge one with the commission of an indictable crime involving moral turpitude or subjecting one to an infamous punishment *(Moore v Francis,* 121 NY 199; *Anonymous,* 60 NY 262; *Brooker v Coffin,* 5 Johns 188, *supra).* This rule has been criticized as unreliable because it made civil liability dependent upon the criminal procedural requirement of an indictment (Prosser, Torts [4th ed], § 112, p 755). A majority of jurisdictions now follow the lead of the Restatement of the Law, permitting slander per se to lie if the crime charged against plaintiff is one "(a) punishable by imprisonment in a state or federal institution, or (b) regarded by public opinion as involving moral turpitude" (Restatement, Torts 2d, § 571; see 1 Harper and James, The Law of Torts, § 5.10, pp 376-377).

Support for construing the remarks as slanderous per se is also found in the surrounding circumstances at the time defendant uttered these charges concerning plaintiff. That context is crucial is a long-standing rule well illustrated by two First Department cases. In the first *(Villemin v Brown,* 193 App Div 777) defendant simply accused plaintiff of being a crook. This was held not to be slanderous per se since under the circumstances the word was used only as a general expression of opprobrium. In the second *(Harris v New York, Westchester & Boston Ry. Co.,* 244 App Div 252) proof of the circumstances surrounding the same accusation made by an agent of defendant that plaintiff was a "crook" left no doubt in anyone's mind as to what was intended, i.e., defendant's agent accused plaintiff of attempting to board defendant's train without paying his proper and full fare *(Harris v New York, Westchester & Boston Ry. Co., supra,* at p 254). In this case when the Durhams, the proposed purchasers, appeared before defendant DeBar regarding the issuance of a building permit with respect to plaintiff's land, they were told that the permit would not be issued because plaintiff was in the "mob" and that Mr. Privitera was a "member of the Mafia and a criminal." Thus defendant DeBar refused to exercise his discretionary power to issue a building permit to which plaintiffs would otherwise have been entitled solely on the ground that in his view Mr. Privitera, Jr., was a criminal. In effect, DeBar accused plaintiff of having committed a crime or crimes for which the punishment was the loss of plaintiff Privitera's civil rights (Correction Law, § 701, subd 3). Since in a slander action the right sought to be protected is one's reputation, and under New York law it is slanderous per se to charge one with an indictable offense; *ipso facto,* falsely to imply that another is a convicted criminal is slanderous per se (1 Harper and James, The Law of Torts, § 5.10, p 379).

Finally, in a defamation action a court should take the words charged in their natural meaning and not strive to interpret them in their most inoffensive sense so as to strain to find them not to be slanderous (see *Mencher v Chesley,* 297 NY 94, 99). The words used in the instant case—a member of the Mafia and a criminal—are different in kind

from the cases where the charge is that a person is simply called a Communist or an anarchist. It is possible to be a theoretical Communist or believe in anarchy as a political principle, without engaging in their practices. One cannot be a theoretical "member of the Mafia". Whether language used is slanderous per se should be judged by "the temper of the times, the current of contemporary public opinion, with the result that words, harmless in one age, in one community, may be highly damaging to reputation at another time or in a different place" *(Mencher v Chesley,* 297 NY 94, 100, *supra).* Viewed in light of today's public perception of the Mafia, the words defendant used to describe plaintiff, standing alone, charged plaintiff with being a vicious, immoral person who by common definition and public perception lives by racketeering and syndicalism, indictable offenses under New York law; and at the same time accused him of an offense indictable under Federal law. In the context in which the words were used, defendant also accused plaintiff of being a convicted criminal which plainly is slander per se. Like a miasma, this pernicious charge seeps into the community and lingers there long after defendant utters it. Thus, in this time and under the law of this State, such is slander per se.

DILLON, P. J., SCHNEPP and DOERR, JJ., concur with SIMONS, J.; CARDAMONE, J., concurs in result only in a separate opinion.

Judgment modified, and as modified, affirmed, without costs, in accordance with opinion by SIMONS, J.