600 WEST 115TH STREET CORP., Respondent, v ROBERT VON GUTFELD, Appellant.

First Department, June 25, 1991

## APPEARANCES OF COUNSEL

*Mark S. Moroknek* of counsel *(Ayers & Thompson,* attorneys), for appellant.

*David S. Friedberg* for respondent.

## OPINION OF THE COURT

Ross, J.

The issue presented is whether the oral statements of the defendant concerning the plaintiff corporation, made during a public meeting of a Manhattan Community Board, are defamatory or constitutionally protected expressions of opinion.

In 1985, an apartment building (building), located at 600 West 115th Street, Manhattan, converted to cooperative ownership. On the street level of that building are four commercial condominium units, which together with the cooperative residential units, comprise a condominium governed by a board of managers (Board).

Since 1987, one of the building's condominium units has been occupied by a restaurant, owned and operated by 600 West 115th Street Corp. (corporation), under the trade name "GRANDMA'S". Initially, the corporation rented the unit from the building sponsor, Coronet Properties Company (Coronet), and, since the date Coronet sold same to Excelsior Associates (Associates), the corporation has rented from Associates.

In March 1988, the corporation filed an application with the City of New York Department of Consumer Affairs (Department) for a license to, in substance, construct an enclosed sidewalk cafe, adjacent to its restaurant, in front of the building. By letter, dated April 28, 1988, the Department rejected the application, upon the ground that the corporation had not received prior approval from the Board.

Subsequently, the corporation submitted to the Department, in support of its sidewalk cafe application, an affidavit of consent from Associates. In response, by letter, dated October

3, 1988, the Department, in substance, informed counsel for the Board that the application had been forwarded "to City Planning for approval", since "[t]he Department will not become the arbitrator as to whether or not the applicant has the right to construct a sidewalk cafe since they have submitted what appears to be a valid consent to do so. Thus, if you [the building Board] wish to pursue the position that the [condominium] owner does not have the right to build, you should take whatever steps are necessary to obtain a declaratory judgment which supports your position. In the interim, the Department will continue to process the application which, as you know, must go before the Community Board and the Board of Estimate prior to final approval".

On October 11, 1988, Community Board No. 9, Manhattan, held a public meeting on the subject of the corporation's application for the enclosed sidewalk cafe. Prior to the meeting, the Community Board staff alerted the public by, *inter alia,* filing a public hearing notice with the City Planning Commission for insertion in the City Record, mailing notices to 1,000 persons, who were community residents and elected officials, and posting flyers in stores and buildings, located in an area extending from "110th Street to 155th Street from the Hudson River to Edgecombe Avenue".

For more than 30 years, Mr. Robert J. Von Gutfeld has resided in the building, and since the building's conversion to cooperative ownership, he has "been a shareholder and a lessee under the proprietary lease corresponding to Apartment 113". Further, Mr. Von Gutfeld served as president of the Board from March 1985 to June 1988, and, since June 1988, he has served as a member of the board's building Committee.

While president of the Board, Mr Von Gutfeld has stated "a number of problems arose as the result of [the corporation's] operation of the restaurant. Among them were offensive smells in the building due to the ventilation system in the restaurant and parking problems caused by employees of the restaurant".

After his arrival at the Community Board public hearing, Mr. Von Gutfeld filled out a registration statement, indicating he wished to speak against the sidewalk cafe. In that statement, Mr. Von Gutfeld wrote "[t]he licensing of the cafe extension is in violation of the Black Book of the Coop. Consumer Affairs wrote they would issue no permit without

Condo Board approval. They did anyway. The permit is therefore fraudulent".

Thereafter, Mr. Von Gutfeld spoke to the persons assembled, and, in the course of his remarks, he stated, in pertinent part, that the building "has been denigrated by this restaurant and is going to be denigrated further. * * * Now they [the corporation] want to take the sidewalk away. And whose to benefit? Their benefit. And why do they want to do it? Because they have an illegal lease with Coronet that said they could take the sidewalk. * * * Therefore this entire lease * * * is as fraudulent as you get; and it smells of bribery and corruption".

Following the meeting, Community Board No. 9 voted to deny the corporation's application. Further, by letter, dated March 15, 1989, the Department advised the corporation that it was no longer processing the application, since the building's Board had not given its consent.

In November 1988, the corporation (plaintiff) commenced a defamation action against Mr. Von Gutfeld (defendant) to recover damages, based upon the defendant's use of such words as illegal, fraudulent, bribery and corruption, when he spoke against the construction of the enclosed sidewalk cafe. The complaint alleges, *inter alia*, that defendant knew that his defamatory statements were false, and that, as a result, plaintiff's reputation, good name and the integrity of its business were damaged. Defendant denied making such statements.

Issue was joined, and during an examination before trial (EBT) of Community Board No. 9's District Manager, the parties learned for the first time that defendant's remarks as well as those of other participants in the public meeting, had been tape recorded. Thereafter, the defendant's audio and voice analysis expert prepared, from that cassette and/or audio tape, a transcript.

Soon after receiving a copy of the tape, containing the words actually uttered by defendant, plaintiff moved for leave to amend the complaint to, *inter alia*, set forth defendant's exact defamatory words, which are the portion of defendant's remarks quoted *supra*, increase the *ad damnum* clause from $2 million to $3 million, and to add a punitive damages claim for $4 million. In response, defendant cross-moved for summary judgment, dismissing the complaint. By order, entered April 30, 1990, the IAS court, *inter alia*, granted plaintiff's

motion to amend the complaint, and denied defendant's cross motion. Defendant appeals.

■ While NY Constitution, article I, § 8, states, in pertinent part, "[e]very citizen may freely speak, write and publish his sentiments on all subjects, *being responsible for the abuse of that right*" (emphasis added), and, repeatedly the Court of Appeals has held that this language guarantees to the citizens of this State a broader right of free expression than that contained in the First Amendment of the US Constitution *(Immuno AG. v Moor-Jankowski,* 77 NY2d 235, 249 [1991], *on remand from* — US —, 110 S Ct 3266 [1990]; *People ex rel. Arcara v Cloud Books,* 68 NY2d 553, 557-558 [1986]), the Court of Appeals has also cautioned *"[n]o First Amendment protection enfolds false charges of criminal behavior" (Rinaldi v Holt, Rinehart & Winston,* 42 NY2d 369, 382 [1977] [emphasis added]).

Our examination of the development of the law of defamation in this State clearly indicates the continual struggle to strike an appropriate balance between the constitutional right of a person to freely and openly express his or her opinion and society's interest in protecting reputations from false and/or derogatory words.

The Restatement of the Law of Torts defines a defamatory communication as a comment which "tends so to harm the reputation of another as to lower him [or her] in the estimation of the community or to deter third persons from associating or dealing with him [or her]" *(see,* Restatement [Second] of Torts § 559 [1977]).

It is well-established law in New York that "words constitute slander per se if they impute * * * the commission of a crime * * * or if they * * * affect plaintiff in his trade, occupation or profession" *(Privitera v Town of Phelps,* 79 AD2d 1, 3 [1981], *appeal dismissed* 53 NY2d 796 [1981]; *Moore v Francis,* 121 NY 199, 203 [1890]).

Recently, the United States Supreme Court, in *Milkovich v Lorain Journal Co.* (497 US —, —, 110 S Ct 2695, 2707 [1990]), stated that, in view of the existing constitutional protections, there is no need to create a "separate constitutional privilege for 'opinion' [in order to] ensure the freedom of expression guaranteed by the [Federal] First Amendment". Further, that court held "that a statement on matters of public concern must be provable as false before there can be liability under state defamation law" *(Milkovich v Lorain Journal Co., (supra,* 497 US, at —, 110 S Ct, at 2706).

In order to illustrate the issue of falsity, as it relates to an assertion of fact contained in a statement of opinion, the Supreme Court gives the following example, in *Milkovich v Lorain Journal Co., (supra,* 497 US, at —, n 7, 110 S Ct, at 2706, n 7), "[f]or instance, the statement, 'I think Jones lied,' may be provable as false on two levels. First, that the speaker really did not think Jones had lied but said it anyway, and second that Jones really had not lied. It is, of course, the second level of falsity which would ordinarily serve as the basis for a defamation action, though falsity at the first level may serve to establish malice where that is required for recovery".

The 50 States, "so long as they do not impose liability without fault * * * may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual" *(Gertz v Robert Welch, Inc.,* 418 US 323, 347 [1974]; *Milkovich v Lorain Journal Co., supra,* 497 US, at —, 110 S Ct, at 2704).

Almost four years before the *Milkovich v Lorain Journal Co., (supra)* decision, the Court of Appeals held that, in New York State defamation actions, the determination of "whether a given statement expresses fact or opinion * * * is one of law for the court and one which must be answered on the basis of what the average person hearing or reading the communication would take it to mean * * *. There is no definitive test or set of criteria * * *. The essential task is to decide whether the words complained of, considered in the context of the entire communication and of the circumstances in which they were spoken or written, may be reasonably understood as implying the assertion of undisclosed facts justifying the opinion" *(Steinhilber v Alphonse,* 68 NY2d 283, 290 [1986]).

Subsequent to the decision in *Milkovich v Lorain Journal Co., (supra)* although the Court of Appeals reexamined the New York State defamation standard, in the light of that United States Supreme Court opinion, it still concluded "that * * * the standard articulated and applied in *Steinhilber [supra]* furnishes the operative standard in this State for separating actionable fact from protected opinion" *(Immuno AG. v Moor-Jankowski, supra,* at 252).

■ Our review of the record indicates that defendant's remarks about the plaintiff's sidewalk cafe, quoted *supra,* are entitled to a qualified or conditional privilege, since they were made "in the conduct of his own affairs, in a matter where his

interest [was] concerned" (44 NY Jur 2d, Defamation and Privacy, §73, at 37; *Park Knoll Assocs. v Schmidt,* 59 NY2d 205, 210-211 [1983]).

However, in *Toker v Pollak* (44 NY2d 211, 219 [1978]) the Court of Appeals held that "communications protected by a qualified privilege do not provide the communicant with an immunity against the imposition of liability in a defamation action. A qualified privilege does, however, negate any presumption of implied malice flowing from a defamatory statement, and places the burden of proof on this issue upon the plaintiff". Further, a qualified or conditional "privilege is conditioned on its proper exercise, and cannot shelter statements published with malice or with knowledge of their falsity or reckless disregard as to their truth or falsity" *(Loughry v Lincoln First Bank,* 67 NY2d 369, 376 [1986]).

The president of the plaintiff corporation, Mr. Nicolaos Mamaes, testified at an EBT that he had a face-to-face conversation with defendant in front of the building, on October 10, 1988, which was the day before defendant spoke at the Community Board meeting, against approving the sidewalk cafe. In pertinent part, Mr. Mamaes testified the defendant "said to me, who do you know from the City and how much does it cost you to receive [a] license? And I said what do you [defendant] mean, 'Receive license'? To whom do you know, how much did it cost you, to whom did you pay from the City? And I said, 'Watch out what you say here. I never approached the City and we never paid anyone[']".

Defendant now admits that he said "this entire lease * * * is as fraudulent as you get; and it smells of bribery and corruption".

At an EBT, the defendant testified that, although he used the word "fraudulent" at the Community Board hearing, he had "no idea" who had been defrauded, and he did not recall using the words "it smells of bribery and corruption".

■ For more than a century "the Court of Appeals [has] held that before words charging plaintiff with a crime [become] actionable per se, they must impute to plaintiff the commission of an indictable offense upon conviction of which punishment may be inflicted" *(Privitera v Town of Phelps, supra,* 79 AD2d, at 3; *Anonymous,* 60 NY 262, 264 [1875]). Applying this rule to the instant words, we find that plaintiff has alleged slander per se in this complaint, since bribery is "an indictable offense upon conviction of which punishment

may be inflicted" *(Privitera v Town of Phelps, supra; see,* Penal Law §§ 200.00, 200.03, 200.04, which describe the type of bribery offenses a nonpublic servant may commit, involving a public servant).

■ Since it has repeatedly been held that a corporation can be defamed, plaintiff has the necessary standing to commence this action *(see, for example, New York Socy. for Suppression of Vice v Macfadden Publs.,* 260 NY 167, 169 [1932]; *First Natl. Bank v Winters,* 225 NY 47, 52 [1918]; Note, *Corporate Defamation and Product Disparagement: Narrowing the Analogy to Personal Defamation,* 75 Colum L Rev 963 [1975]).

■ As discussed *supra,* although defendant admitted he had no evidence of either fraud or bribery or corruption, he nevertheless used those words in his remarks against the sidewalk cafe. Accordingly, it is fair to assume defendant's statements that plaintiff had committed a fraud, or bribery and corruption were made with reckless indifference to the facts. We note that, in order to give credibility to those remarks, defendant prefaced them with reference to his more than 30 years' association with the building, in capacities such as tenant, shareholder, and part of cooperative management.

Applying the New York defamation standard of considering the words complained of "in the context of the entire communication and of the circumstances in which they were spoken or written" to the instant matter, we find that the context in which defendant delivered his remarks at the Community Board meeting raises a triable issue of fact, as to whether his remarks implied that he knew "certain facts, unknown to his audience, which [supported] his opinion and [were] detrimental to the person about whom he [was] speaking" *(Steinhilber v Alphonse, supra,* at 290).

■ We do not believe that one can, as a matter of law, decide how the average person, hearing defendant's allegations, would interpret same as to whether or not plaintiff had actually bribed, corrupted or otherwise obtained the license by some fraud. This question is better left to the trier of the facts. This is particularly so as defendant's comments are reasonably susceptible of a defamatory connotation.

In other words, we reach that conclusion, upon the basis of our finding that, as a matter of law, defendant's remarks are not clearly susceptible of only one nondefamatory interpretation. We have held that "[i]t is well settled that where the language is susceptible of more than one meaning, a determi-

nation that a defamatory construction 'is the only meaning to be placed upon the words used * * * would encroach upon the province of the jury. It is enough that reasonable basis exists for such an interpretation. Once that is decided, it becomes the jury's function to say whether that was the sense in which the words were likely to be understood by the ordinary and average reader.' *(Mencher v Chesley,* 297 NY 94, 100 * * *; *see also, James v Gannett Co.,* 40 NY2d, at p 419.)" *(Arrigoni v Velella,* 110 AD2d 601, 603 [1st Dept 1985]; *see also, Loughry v Lincoln First Bank, supra,* which is a case involving a jury trial of a defamation action, involving allegations of slander.)

Since there is a triable issue of fact, we find that the IAS court correctly denied the defendant's cross motion for summary judgment. We have stated that summary judgment "should be granted only where no genuine, triable issue of fact exists *(see, Werfel v Zivnostenska Banka,* 287 NY 91)" *(Gibson v American Export Isbrandtsen Lines,* 125 AD2d 65, 74 [1st Dept 1987]).

While we agree with the dissent that a Community Board meeting is a place "where board disputes can be thrashed out in a full and free debate" *(see,* dissent, at 69), we disagree with the dissent's broad brush assertion that defendant's remarks were simply opinions expressed "in the context of an open, no holds barred community discussion" *(see,* dissent, at 69-70), since we find, as discussed *supra,* that there is a triable issue of fact, as to whether defendant's remarks were made with knowledge of their falsity or reckless disregard as to their truth or falsity. We strongly endorse the ruling that "[n]o First Amendment protection enfolds false charges of criminal behavior" *(Rinaldi v Holt, Rinehart & Winston,* 42 NY2d 369, 382 [1977], *supra).*

To support its position, the dissent contends that defendant's remarks were "directly analogous to a 'letters to the editor' column in a newspaper journal" *(see,* dissent, at 70), and he cites the case of *Immuno AG. v Moor-Jankowski* (77 NY2d 235, *supra).* Based upon our examination of that case, we find dissent's reliance on same to be misplaced, since its facts are substantially different from the facts of the instant case.

For example, the newspaper journal in *Immuno AG. v Moor-Jankowski (supra)* was not any ordinary journal, but rather was "the Journal of Medical Primatology [which] is directed to a highly specialized group of readers—medical

doctors, researchers and the medical and science libraries of academic institutions. The average reader is thus likely not a novice in the field of medical primatology, but brings 'a well-developed understanding of the issues facing biomedical researchers using primates as research subjects' (145 AD2d, at 129)" *(Immuno AG. v Moor-Jankowski, supra,* at 253). And perhaps more importantly, in *Immuno AG. v Moor-Jankowski (supra,* at 255), the court stated that the presumptions and predictions of the writer of the letter to the editor of that technical newspaper "would not have been viewed by the average reader of the Journal as conveying actual facts about plaintiff". And nowhere in the subject letter in *Immuno AG. v Moor-Jankowski (supra)* was plaintiff accused of any crime. Turning to the instant case, instead of a highly specialized group of individuals, we find many individuals, of extremely varied backgrounds, and knowledge, coming together to discuss a community issue. In our opinion, the two situations have nothing in common, and, therefore, the finding that the remarks, contained in the letter to the editor, in *Immuno AG. v Moor-Jankowski (supra)* were not actionable has no relevance to the determination to be made in the subject case, in which plaintiff was accused of criminal conduct.

The Court of Appeals, in *Edenwald Contr. Co. v City of New York* (60 NY2d 957, 959 [1983]), held "[p]ermission to amend pleadings should be 'freely given' (CPLR 3025, subd [b]). The decision to allow or disallow the amendment is committed to the court's discretion. *(Murray v City of New York,* 43 NY2d 400, 404-405.)" CPLR 3025 (b), provides that a court may grant leave to amend pleadings "at any time", and generally "[l]eave to amend the pleadings 'shall be freely given' absent prejudice or surprise resulting directly from the delay (CPLR 3025, subd [b]; *Fahey v County of Ontario,* 44 NY2d 934, 935)" *(McCaskey, Davies & Assocs. v New York City Health & Hosps. Corp.,* 59 NY2d 755, 757 [1983]). Further, usually leave "to amend an *ad damnum* clause is one for which leave should be freely given absent prejudice or surprise resulting directly from the delay" *(Drechsel v Loblaw, Inc.,* 64 AD2d 1022, 1023 [1978]).

Since plaintiff's allegations, as discussed *supra,* fall into the category of slander per se, in that the objectional remarks asserted that plaintiff committed a crime, there is no requirement to plead special damages *(Matherson v Marchello,* 100 AD2d 233, 236 [1984]). Moreover, punitive damages may be recoverable herein, since defendant's liability may be based

upon a showing of knowledge of false or reckless disregard for the truth *(Gertz v Robert Welch, Inc., supra,* 418 US, at 348-350).

Applying the legal authority, *supra,* to the proposed amended complaint, which indicates, *inter alia,* that the proposed cause of action relates back to the facts, circumstances and proof underlying the original complaint, and the parties did not learn until discovery that defendant's actual remarks had been tape recorded, we find that the IAS court did not abuse its discretion in granting plaintiff's motion for leave to amend the complaint, as indicated *supra.*

We have considered the other contentions of the parties, and find them to be without merit.

Accordingly, order, Supreme Court, New York County (Karla Moskowitz, J.), entered April 30, 1990, which, *inter alia,* granted plaintiff's motion for leave to amend the complaint to, *inter alia,* set forth defendant's actual defamatory words, increase the ad damnum clause from $2 million to $3 million, and to add a punitive damage claim for $4 million, and denied defendant's cross motion for summary judgment, dismissing complaint, is affirmed, with costs.

Asch, J. (dissenting). I dissent and would grant defendant's cross motion for summary judgment dismissing the complaint.

The remarks of defendant, Robert Von Gutfeld, on the specific matter in issue at the public community board hearing is precisely the type of expression which is protected, at least under the New York State Constitution, and is not actionable. This conclusion is mandated by *Immuno AG. v Moor-Jankowski* (74 NY2d 548, *vacated and remanded* — US —, 110 S Ct 3266, *for reconsideration in light of Milkovich v Lorain Journal Co.,* 497 US —, 110 S Ct 2695, *and upon reconsideration* 77 NY2d 235, *adhering to same result).*

Defendant, Von Gutfeld, has been a shareholder in the cooperative-condominium apartment building, residing there for 33 years and was president of the building's board of managers from 1985 to 1988. Since June 1988 he has served on the Board's building committee.

At the street level of the building one commercial condominium unit is occupied by "Grandma's Restaurant" which has been owned and operated by the plaintiff since 1987.

In March of 1988 the plaintiff applied for a permit from the City of New York to enable it to have a sidewalk cafe exten-

sion. Prior approval was never obtained from the Board of Managers and in a letter dated April 28, 1988 the City Department of Consumer Affairs rejected the application stating: "the Board must approve any construction of a sidewalk cafe as the sidewalk is specifically included as a common element of the condominium plan."

Again without first obtaining the approval of the board, plaintiff's application was resubmitted to the Department of Consumer Affairs. The application was once again rejected in a letter dated March 15, 1989.

However, before that final rejection occurred, the plaintiff submitted to Consumer Affairs an affidavit of consent from Excelsior Associates, owner of the commercial condominium but never obtaining approval of the board of managers.

The basis of defendant's statements and his action stemmed from Consumer Affairs' initial treatment of that "consent" by Excelsior.

On October 3, 1988 Consumer Affairs wrote to all concerned indicating that it would not become the arbitrator as to whether or not the applicant had the right to construct a sidewalk cafe. At that point, Consumer Affairs thought the affidavit from the condominium owner was a "valid consent". Subsequently, as noted, in March of 1989, it stated that it was unable to continue processing the application because it did not have an affidavit of consent from the condominium board of managers. But, before this clarification, many of the parties assumed that somehow the application would be approved by the city agency even without consent from the board of managers.

A public hearing was scheduled by Community Board No. 9 of Manhattan. Mr. Von Gutfeld, among others, spoke at the hearing. He addressed various matters; that the building did not need "beautification by a restaurant", problems with offensive smells and parking, his feeling that the building had been "denigrated" by plaintiff's restaurant and would be "denigrated further" by the proposed sidewalk cafe.

Mr. Von Gutfeld noted for background that plaintiff had not obtained prior approval of the board of managers and that previously the Department of Consumer Affairs had, on that ground, rejected the application. Addressing the apparent sudden reversal of Consumer Affairs' position, he said that the manner in which that agency handled the matter "smelled of bribery and corruption".

Thus, most simply, what defendant expressed at the Community Board meeting, which is, in effect, the hallowed New England "town hall" meeting, in modern urban dress, where board disputes can be thrashed out in a full and free debate, were either explicit opinions or in context and under the circumstances clearly his opinion and not stated as a factual matter.

While *Immuno AG. v Moor-Jankowski* (77 NY2d 235, *supra)* dealt with a letter to the editor, the comments by Judge Kaye are equally applicable to the circumstances here—a community board meeting—our own modern version of the "town hall" forum.

"Significantly, for many members of the public, a letter to the editor may be the only available opportunity to air concerns about issues affecting them. A citizen troubled by things going wrong 'should be free to "write to the newspaper": and the newspaper should be free to publish [the] letter. It is often the only way to get things put right.' * * * The availability of such a forum is important not only because it allows persons or groups with views on a subject of public interest to reach and persuade the broader community but also because it allows the readership to learn about grievances, both from the original writers and from those who respond, that perhaps had previously circulated only as rumor; such a forum can advance an issue beyond invective. Finally, at the least, the public may learn something, for better or worse, about the person or group that wrote such a letter * * *. Thus, in determining how the average person would view McGreal's letter, we take into account that it is a letter to the editor and that: '[t]he common expectation of a letter to the editor is not that it will serve as a vehicle for the rigorous and comprehensive presentation of factual matter but as one principally for the expression of individual opinion.' * * *

"We conclude that the body of the letter in issue communicated the accusations of a group * * * and that the writer's presumptions and predictions as to what 'appeared to be' or 'might well be' or 'could well happen' or 'should be' would not have been viewed by the average reader of the Journal as conveying actual facts about plaintiff" *(Immuno AG. v Moor-Jankowski, supra,* at 253-255).

Likewise, in this case, the defendant's expression that the events "smelled of" expressed his presumption as to what "appeared to be" and was made in the context of an open, no

holds barred community discussion, in a favored public forum, directly analogous to a "letters to the editor" column in a newspaper journal. Consequently, it is protected under our State constitutional free speech guarantee as opinion.

MURPHY, P. J., and SMITH, J., concur with ROSS, J.; MILONAS and ASCH, JJ., dissent in an opinion by ASCH, J.

Order, Supreme Court, New York County, entered on or about April 30, 1990, affirmed, with costs.

Motion to strike defendant's reply brief is denied.