ERNEST KLEIN, Respondent, *v.* LAWRENCE McGAULEY et al., Appellants.

Second Department, March 25, 1968.

*Lord, Day & Lord* (*Reigh F. Klann* and *John Koshel, Jr.,* of counsel), for appellants.

*Raymond Rubin, Harry L. Klein* and *Myles N. Weintraub* for respondent.

CHRIST, J. The action is in slander. The defendants moved (1) for summary judgment on the sixth (and sole remaining) cause of action in the amended complaint on the ground the allegedly slanderous statement in question was absolutely privileged as a matter of law, having been made in the course of, and pertinent to, a judicial proceeding; or, (2) in the alternative, for dismissal of that cause on the ground (among others) the statement was not slanderous per se and no special damage was alleged. Their motion was in all respects denied and this appeal tests the correctness of that determination.

It is alleged in the amended complaint that the plaintiff is a duly ordained rabbi of the Hebrew Orthodox faith and occupies the pulpit of an established synagogue in Brooklyn, New York. The following is established in the record. In 1961 a judgment of $13,755.34 was recovered against the plaintiff herein; the judgment was not satisfied and the defendant law firm, as attorneys for the judgment creditor, commenced a supplementary proceeding against the plaintiff on July 1, 1961 by service of a subpoena duces tecum. On July 5, 1961, the return date of the subpoena, the plaintiff appeared for examination at the office of the clerk of Special Term, Part II, of the Supreme Court in Kings County.

The plaintiff claims that when he arrived, defendant McGauley, an associate of the defendant law firm, approached him and, in the presence of various people, said, "If you do not pay the judgment in this case, I will call all the newspapers here and tell them who you are and that you are a crook." It is this statement which forms the basis of the sixth cause of action.

The complaint states (among other things) that by these words "the defendants meant * * * that plaintiff was a person of ill and dishonest repute who was guilty of criminal acts and of various offenses and dishonest dealings and could not be trusted and was a person not fit to engage in the profession of a rabbi." It states further that thereby the plaintiff's reputation "in his profession as a rabbi has been defamed and adversely affected" and he "has been held up as an object of [public] scorn and contempt". No special damage is alleged.

Dealing briefly with the first question on this appeal, namely, whether the statement was absolutely privileged in any event as being made in the course of, and pertinent to, a judicial proceeding, it is uncontested that the statement, if made, was made on the occasion of the plaintiff's appearance in the court clerk's office in accordance with the service of a subpoena in a pending supplementary proceeding. Where there is no dispute

as to the facts, the determination of the question of privilege is a question of law (*People ex rel. Bensky* v. *Warden of City Prison,* 258 N. Y. 55, 60; 2 Seelman, Libel and Slander [rev. ed.], p. 1058, par. 105).

There is no doubt that this statement, if made, was made in the course of a judicial proceeding. A supplementary proceeding to enforce the collection of a judgment, commenced by the service of a subpœna duces tecum, is a judicial proceeding within the meaning of the privilege rule (see *Cooper* v. *Stone,* 14 A D 2d 814, holding that statements in affidavits submitted in such a proceeding are absolutely privileged). The judgment debtor is required to come before the court and be examined under oath concerning his assets; and his failure to do so is punishable as a contempt of court (CPLR 2308, subd. [a]; 5210, 5251 [formerly Civ. Prac. Act, §§ 405, 801]).

The privilege is not limited to statements made or documents used in open court. "In the course of" has been broadly construed to embrace letters between litigating parties or their attorneys or sent to the court concerning a pending proceeding (*Simon* v. *Potts,* 33 Misc 2d 183), unsolicited offers of settlement (*Zirn* v. *Cullom,* 187 Misc. 241), briefs on appeal and statements made during an examination of corporation books and records at a hotel pursuant to an order of discovery (*Kraushaar* v. *Lavin,* 39 N. Y. S. 2d 880). Thus, the fact that this statement was spontaneously made prior to the swearing in of the plaintiff as a witness does not deprive it of protection.

However, the statement complained of was not pertinent to the proceeding. Although the test of pertinency is extremely liberal, the privilege is nevertheless lost "when the language used goes beyond the bounds of reason and is so clearly impertinent and needlessly defamatory as not to admit of discussion" (*People ex rel. Bensky* v. *Warden of City Prison,* 258 N. Y. 55, 59, *supra*). Here, the alleged language used constitutes just such an extreme case. True, the purpose of a supplementary proceeding is to expedite the collection of a civil judgment; but we cannot approve the use of threats and abuse as a means of forcing such payment. The purpose of the intended examination having been merely to inquire into the plaintiff's possession of assets which might be applied in satisfaction of his debt, the offending statement, if made, was completely uncalled for and needlessly defamatory.

Although the alleged offensive utterance is unprotected by an absolute privilege, the question remains whether it is actionable without proof of special damage. The defendants' most serious argument for reversal is that the word "crook" is

not slanderous per se because it neither imputes an indictable crime nor referred to the plaintiff in his clerical capacity. Before this contention is analyzed in detail, a brief summary of the law of slander would be helpful.

Contrary to the law of libel, the spoken word which results only in the victim being held up to ridicule and contempt is never actionable in a slander suit without proof of special damage, unless it falls within one of several clearly defined categories. For present purposes, those categories include a charge of an indictable crime involving moral turpitude or infamous punishment and a charge which touches a person in his trade, office or profession and tends to injure him therein (2 Seelman, Libel and Slander [rev. ed.], pp. 869–874, pars. 1–3, *supra*). The reason for the differing legal treatment accorded libel and slander is simple: the spoken accusation, as opposed to the written one, is usually unpremeditated, made in the heat of anger, undiscriminating and of limited circulation (1 Seelman, *supra*, pp. 1–2, pars. 3–5).

With respect to the first category of slander per se, to wit: certain charges of criminal conduct, there has been a conflict between the decisions of the First and Second Departments. In *Weiner* v. *Leviton* (230 App. Div. 312, 313–314), we held that to accuse another of being a "crook" is slanderous per se, notwithstanding a prior decision of the First Department to the contrary (*Villemin* v. *Brown*, 193 App. Div. 777). Having now reconsidered the question, we conclude that the rule enunciated in *Weiner* should be discarded. Standing alone, the word "crook" is no doubt defamatory and actionable per se when written, but it cannot be said to charge an indictable crime involving moral turpitude or infamous punishment, an element necessary to a finding of slander per se, without further refinement or reference to a specific act.

Further, even if the *Weiner* rule had some basis in fact at the time, I believe the word "crook" is not commonly understood today as imputing an indictable crime. Rather, it is a term used frequently as a simple expression of opprobrium and applied to persons not guilty of any crime. However abusive, it has been bandied about to such an extent that its sting has been greatly reduced. We do not condone its use, but at the same time we are mindful of our duty to protect the courts from the burden of insubstantial lawsuits. Of course, where greater damage may be occasioned, that is, where the term is applied to one in his business or profession or refers to a specific act in the nature of an indictable crime (see *Harris* v. *New York, Westchester & Boston Ry. Co.*, 244 App. Div. 252,

254), the law should and will continue to provide adequate protection. Therefore, we now hold that the word "crook" is not actionable per se when uttered as a general expression of opprobrium and without reference to one in his business or profession or to any unlawful conduct with which the accused [plaintiff] is charged.

Turning now to the second pertinent category of slander per se — words tending to injure one in his business or profession — it is evident that the instant complaint cannot be saved under such an analysis either. It may be true, as a general matter, that the instant statement, applied to a clergyman, is slander per se even though it does not refer to any act by him in that capacity, because it may, if true, prove him unfit to continue his calling (see, e.g., *Nichols* v. *Item Publishers,* 309 N. Y. 596 [libel case]). However, under the specific circumstances of this case, I find the alleged utterance not to be actionable without proof of special damages.

All of the cases cited by the plaintiff in support of his contention are distinguishable in that they dealt not with slander but with libel of wide dissemination; and, furthermore, all of the written matter complained of specifically identified the respective plaintiffs as clergymen and highlighted that fact (see, e.g., *Smith* v. *Buffalo Times,* 124 Misc. 495, affd. 214 App. Div. 759; *Potter* v. *New York Evening Journal Pub. Co.,* 68 App. Div. 95). In the instant case, the allegedly defamatory statement was addressed to the plaintiff in his capacity as a judgment debtor and not as a rabbi; it did not identify the plaintiff as a clergyman. Although this omission might be unimportant had the utterance been made in his synagogue, in a public speech or in a statement to the newspapers, it assumes importance when, as here, the alleged statement is made in the clerk's office of a courthouse in the context of an essentially private confrontation.

If, as the plaintiff contends, his being called a "crook" under these circumstances did constitute such an assault upon his reputation and standing in the Orthodox Jewish community as to actually call into question his fitness to act as a spiritual leader thereof, which is extremely doubtful, the supportive facts should have been pleaded as special damages.

The order should be modified so as to grant the defendants' motion insofar as it was to dismiss the amended complaint, with leave to the plaintiff to serve a further amended complaint.

BELDOCK, P. J., BRENNAN, HOPKINS and MARTUSCELLO, JJ., concur.

Order modified, on the law, by striking out the words " in all respects denied " in the second decretal paragraph (which denied the alternative relief) and substituting therefor the following: " granted, with leave to plaintiff to serve a further amended complaint ". As so modified, order affirmed insofar as appealed from, with $10 costs and disbursements. Plaintiff may serve such further amended complaint within 20 days after entry of the order hereon.