No. 85-618

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

DALE COX,

        Petitioner,

   -vs-

LEE ENTERPRISES, INC.,
and the BILLINGS GAZETTE,
a division of LEE ENTERPRISES,
INC.,

        Respondent.

ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

      For Petitioner:

          Huntley & Eakin; Gene Huntley argued, Baker, Montana

      For Respondent:

          Moulton, Bellingham, Longo & Mather; Sidney R. Thomas,
          Billings, Montana  (Billings Gazette)
          P. Cameron Devore argued for Billings Gazette, Seattle,
          Washington

      For Amicus Curiae:

          Goetz, Madden & Dunn; James Goetz argued for Allied
          Daily Newspapers and the Reporters Committee for
          Freedom of the Press, Bozeman, Montana
          Peter M. Meloy for Montana Press Association, Great
          Falls Tribune, Associated Press, Society for Profes-
          sional Journalists & Montana Press Women, Helena,
          Montana

                  Submitted:  June 20, 1986

                    Decided:  August 13, 1986

Filed:  AUG 13 1986

_____
Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

This Court has accepted jurisdiction to determine a question of state law certified by the United States District Court for the District of Montana.

Petitioner Dale Cox is an attorney practicing in Glendive, Montana. Respondents are Lee Enterprises, Inc. and the Billings Gazette, a division of Lee Enterprises, Inc. The following statement of facts is taken from the federal court's order certifying the question to this Court.

In 1971, Laura Thomas was involved in an auto accident and Cox was retained to represent her. Cox settled the case with the insurance company, and because Laura was a minor with no living parents, a legal guardian was appointed and the settlement money was placed in the guardianship. Due to apparent physical and mental impairments existing since childhood, Laura's guardianship continued beyond her age of majority. In 1978, five years after legally becoming an adult, Laura had the guardianship terminated and the remaining funds distributed to her.

On May 27, 1980, Laura filed a complaint against Cox in the United States District Court for the Western District of Washington alleging injuries resulting from unnecessary extension of the guardianship. On June 8, 1980, prior to the time Cox had been served with the complaint, the Billings Gazette published an article paraphrasing and quoting allegations against Cox listed in the complaint. The case was subsequently transferred to the United States District Court for the District of Montana; by opinion dated December 23, 1982, the federal court entered summary judgment in favor of Cox.

2

Cox filed a defamation action against the Billings Gazette and Lee Enterprises, Inc., for publication of the June 8, 1980, article. In their answer, respondents raised the affirmative defense that the news article was privileged under § 27-1-804(4), MCA, because it was a fair and accurate report without malice of a judicial proceeding. Following briefing and oral argument the federal court issued an order dated January 16, 1986, certifying the following question of law to be answered by this Court:

> Under the law of the State of Montana, is the defense of privilege available to a newspaper publisher in a defamation case when the alleged defamation consists of facts taken from preliminary judicial pleadings which have been filed in court but which have not been judicially acted upon?

The applicable statute is § 27-1-804(4), MCA, which makes a fair and true report without malice of a judicial proceeding a privileged publication. Respondents contend "judicial proceeding" should be construed to encompass the filing of a complaint. We agree.

"Judicial proceeding" is not defined within the Montana Code. Therefore, we look to the approved usage of the term or the appropriate meaning in law. § 1-2-107, MCA.

Included in the common definition of "proceeding" is "legal action", Webster's New Collegiate Dictionary, 910 (1979), and "the instituting or conducting of litigation", American Heritage Dictionary, 987, Second College Edition (1985). Black's Law Dictionary, 986, (4th ed. 1968), lists the following definitions of "judicial proceeding:" "Any proceeding wherein judicial action is invoked and taken;" "Any proceeding to obtain such remedy as the law allows;" "Any step taken in a court of justice in the prosecution or defense of an action."

We look to plain meaning of words because our paramount task in statutory construction is to determine what legislators intended when they phrased the statute. Most are lay people and we look to common usage in honoring legislative purpose.

Application of the above definitions leads us to a finding that the filing of a complaint was intended to be included within the phrase "judicial proceeding".

The modern trend is to apply a qualified privilege to reports of judicial pleadings which have not yet been the subject of judicial action. In fact most jurisdictions hold that a complaint is part of the judicial proceeding. The rationale is explained by an Illinois court in Newell v. Field Enterprises, Inc., (Ill. App. 1980) 91 Ill. App. 3d 735, 415 N.E.2d 434. That court said:

> Certainly, the administration of justice is of utmost importance to the citizenry. While we are aware that pleadings are one-sided and may contain, by design, highly deflamatory statements, we believe the information found in such pleadings is of sufficient value as to warrant the encouragement of its publication.

415 N.E.2d 444.

The right to inspect public documents and be fully informed of their contents finds strong expression in our state constitution. Article II, § 9 provides:

> Right to know. No person shall be deprived of the right to examine documents or observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure.

A broad interpretation of the privilege is statutorily supported by the right to inspect public documents, § 2-6-102, MCA, and the right to public sittings of the courts, § 3-1-312, MCA. A complaint is a public document pursuant to § 2-6-101, MCA. These statutes reflect Montana's

4

commitment to the public's right to know what is occurring within the judicial system, including the filing of civil suits.

Our function is not to determine whether the Billings Gazette should respond in damages. That question will be decided by a jury in federal court. Fairness, truth and malice will be at the controversy's core. The qualified privilege exists only where the report was true, fair, and published without malice.

Our task is to answer the certified question. This court did not enact the statute in question and does not rule on its wisdom.

We hold that pursuant to § 27-1-804(4), MCA, a qualified privilege is available as a defense for a newspaper publisher in a defamation case when the alleged defamation consists of facts taken from preliminary judicial pleadings which have been filed in court but which have not been judicially acted upon.

_____
                                        Justice

We Concur:

_____
            Chief Justice

_____



_____


_____
            Justices

_____
Honorable Frank I. Haswell,
Retired Chief Justice, sit-
ting in place of Mr. Justice
L. C. Gulbrandson

5

Mr. Justice John Conway Harrison, dissenting.

I must dissent. Once again we are presented with a certification from the Federal Court without a sufficient fact question to properly and fully answer the problem presented.

As noted by the majority opinion, the complaint of Laura Thomas, a diagnosed retarded person, was filed in the United States District Court in Washington and was then transferred to the United States District Court in Montana. The complaint charged the petitioner, a long-time reputable practitioner of law in Montana, of serious illegality concerning the handling of the estate of Laura Cox's mother and of Laura's resulting guardianship, all of which irreparably damaged the petitioner's reputation as an attorney of law in the state of Montana. Evidence of the untruth of the charges is clearly shown by the summary judgment issued by the Federal District Court finding Cox free of any misconduct of the handling of Laura's affairs. However, it did not restore the petitioner's good reputation to the hundreds of persons who read the first story in the Billings Gazette, published on a Sunday in glaring headlines. As noted by the majority, at the time of the publication the petitioner had not been served, no reporter from the Gazette had made any effort to check with him nor had any judicial action been taken by a responsible District Judge.

This brings me to the issues presented to us from the Federal Court of whether in a defamation case where the facts in which the preliminary judicial proceedings filed in court and having not been served upon the defendant or judicially acted upon are privileged "judicial proceedings."

6

Admitting that there are divergent views on this subject, I choose to accept and support that view Mr. Justice Oliver Wendell Holmes, Jr. expressed when he was a Justice on the Supreme Judicial Court of Massachusetts:

> The chief advantage to the country which we can discern, and that which we understand to be intended by the foregoing passage, is the security which publicity gives for the proper administration of justice . . . It is desirable that the trial of causes should take place under the public eye, not because the controversies of one citizen with another are of public concern, but because it is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed.
>
> [I]t is clear that [the grounds for privilege] have no application whatever to the contents of a preliminary written statement of the claim or charge. These do not constitute a proceeding in open court. Knowledge of them throws no light upon the administration of justice. Both form and contents depend wholly on the will of the private individual, who may not be even an officer of the court. It would be carrying privilege farther than we feel prepared to carry it, to say that, by the easy means of entitling and filing it in a cause, a sufficient foundation may be laid for scattering any libel broadcast with impunity.

Cowley v. Pulsifer (Mass. 1884), 137 Mass. 392 at 394. See, 54 Colum.L.Rev. 364, (1954).

This same view is pointed out in the case of Park v. The Detroit Free Press Co. (Mich. 1888), 40 N.W. 731, 734.

Recognizing that these are earlier cases concerning this matter, public policy considerations and the promotion of important values requires that a privilege not be extended to the publication in question. Here, the matter was not of

7

such grave import that there was not time to investigate more fully these charges before publication.

The whole purpose of our constitutional rights and our statutes grows out of the central core belief that the individual comes first, that all men are children of God, and that their personalities are therefore sacred and carries with it a great belief that personal liberties should be protected. It is repugnant that anyone would steal from the human being that which is most precious to him --his good name-- by imputing things that are untrue.

To me it is an especially unhappy circumstance that occasionally this is done in the name of the First Amendment. This, I believe, does not grant the protection of the law an individual is entitled to expect.

It is the very basis of our great heritage that we expect the strictest responsibility to be applied by those who rely on the privileges of the First Amendment. That responsibility should have been exercised by the Gazette before it published any charges against Mr. Cox. Whenever such care is not taken and those principles which protect an individual and his good name against besmirchment by false statements are abused, we have failed to carry forward the ideals guaranteed to us by our constitution and statutes.

I would find that until a competent jurist has examined the files and the petitioner has had an opportunity to respond, such pleadings are not privileged.

John Conway Harrison,
Justice

8

Mr. Justice John C. Sheehy dissenting:

I concur with the views expressed in the dissent of Mr. Justice John C. Harrison, and add some additional comments:

Libel is defined as a false and unprivileged publication. Section 27-1-802, MCA. To determine whether a publication is privileged, one looks to § 27-1-804(4), MCA. With respect to judicial proceedings, that section provides:

A privileged publication is one made: "(4) by a fair and true report without malice of a judicial . . . proceeding . . ."

There is no automatic privilege under § 27-1-804, MCA, for publications by newspapers. To be entitled to the privilege, the publications must be fair, true, and without malice. Otherwise there is no privilege. Unfair editorializing or yellowdogging the allegations of a complaint to slant the reader or sell newspapers would bring the article within the rule announced by the New York Court of Appeals in Klein v. McGauley (N.Y. 1968), 288 N.Y.S.2d 751, wherein it is stated in a slander action that a statement which is extreme and beyond the bounds of reason is not entitled to the privilege even though it were a part of a judicial proceeding.

I further contend that the provisions of § 27-1-804, MCA, in defamation cases should be examined in the light of the later adoption in the 1972 Montana Constitution of this provision:

. . . Every person shall be free to speak or publish whatever he will on any subject, being responsible for all abuse of that liberty.

Art. II, § 7.

It is apparent that the constitutional grant "to speak or publish whatever he will on any subject" is far more broad than the statute defining privileged communications in § 27-1-804, MCA. Under the constitutional provision, the Billings Gazette is free to publish whatever and whenever it might about any person or subject. The only limitation on that freedom (perhaps I should say "chilling effect") is the responsibility for abuse of the freedom. In defamation cases, therefore, under the present state constitution, there should be but two defenses, one that the statement is true, (but truth above would not save the constitutional provision, see New York Times, infra), and two, that the liberty to publish was not abused.

I would hold, therefore, that in defamation actions for libel or slander, the statutory privileges for free speech and a free press are not to be found within § 27-1-804, MCA, but rather center on whether the statements made or the articles published abused the liberty to speak or to publish under state law.

While I admit that such a rule might lead to ad hoc determinations from case to case, the rule would be more in accord with the trend to be observed in the decisions from the United States Supreme Court which themselves appear to be ad hoc, though generally in favor of the press. The United States Supreme Court looks to the character of the person defamed, and changes the burden of proof of malice accordingly.

Thus, in New York Times v. Sullivan (1964), 376 U.S. 254, 279-280, 84 S.Ct. 710, 11 L.Ed.2d 686, the Supreme Court held that the First Amendment required the plaintiff to show that in publishing the defamatory statement the defendant

10

acted with actual malice--with knowledge that it was false or with reckless disregard of whether it was false or not--and that such actual malice must be shown with "convincing clarity." New York Times involved a public official, but the New York Times rule has been applied to public figures as well, Gertz v. Robert Welch, Inc. (1974), 418 U.S. 323, 351, 94 S.Ct. 2997, 41 L.Ed.2d 789, wherein a public figure was defined as an individual who may achieve some pervasive fame or notoriety that he/she becomes a public figure for all purposes and in all contexts, or an individual who voluntarily injects himself/herself or is drawn into a particular public controversy and therefore becomes a public figure for a limited range of issues. An attorney, however, without more, is neither a public official nor a public figure and the heightened standard of proof of New York Times and Gertz does not apply to the proof of malice.

It may be that the majority is saying in reality that its "qualified" privilege is one that is fair, true and without malice. If that be the true import of the majority, it should be more plainly stated.

_____
John C. Sheehy
                Justice

11